Filed 7/7/14

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)


| | |
|---|---|
| JASON MICHAEL CARLSEN, | C070671 |
| Plaintiff and Appellant, | (Super. Ct. No. 170436) |
| v. | |
| SARAH KOIVUMAKI, | |
| Defendant and Appellant; | |
| ZACHARY GUDELUNAS, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Shasta County, Monica Marlow, Judge. Reversed in part and affirmed in part.

Kern, Noda, Devine & Segal and Michael G. Thomas for Plaintiff and Appellant.

Johnson & Haslerud, Haslerud Law Office and Gary E. Haslerud for Defendant and Appellant.

No appearance for Defendant and Respondent.

This is a defendant's summary judgment case. A summary judgment may be granted a defendant if it is shown that the plaintiff cannot establish one or more elements of his or her cause of action or that there is a complete defense to the claim. (Code Civ.

1

Proc., § 437c, subd. (p)(2).)[1]  A defendant's "burden of production is to show that ' "one or more elements of" the [plaintiff's] "cause of action" . . . "cannot be established . . ." . . . .' [Citations.]  The burden can be satisfied by a showing that 'the plaintiff does not possess, and cannot reasonably obtain, needed evidence . . . .' [Citation.]  'If a plaintiff pleads several theories, the defendant has the burden of demonstrating there are no material facts requiring trial on any of them.' "  (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 162-163 (*Teselle*).)

Plaintiff Jason Michael Carlsen (Jason) was severely injured from a fall from a cliff above the Sacramento River in Redding.[2]  Although he cannot recall how or why he fell, he sued his two companions Sarah Koivumaki (Sarah) and Zachary Gudelunas (Zach), asserting causes of action for assault and battery, negligence, willful misconduct, and intentional infliction of emotional distress.  He claims that defendants put him in peril by bringing him to the edge of a cliff when he was highly intoxicated, leading to his fall, and that they aggravated his injuries by waiting several hours to inform the authorities of the fall.

The trial court granted summary judgment in favor of Sarah, finding that it could not reasonably be inferred from the evidence submitted that she touched or threatened to touch Jason or that she breached a duty of care owed to him.  Jason contends the trial court erred because "[m]ultiple material issues of fact [exist] relating to [Sarah]'s role in placing [him] in peril at the bottom of the cliff," and "[Sarah] owed [him] an affirmative duty to summon aid so as to protect [him] in the face of the ongoing imminent harm, danger, and medical emergency" and "as a result of a special relationship."

---

[1]  Further undesignated statutory references are to the Code of Civil Procedure.

[2]  We refer to the parties by their first names, not from disrespect, but to ease the reader's burden.

The question on summary judgment is whether a jury reasonably could infer that Sarah put Jason in a position of peril by planning a trip to the cliff with Zach and in cooperating with him in bringing an inebriated Jason to a place at the edge of a cliff and in delaying the summoning of help for several hours. Sarah relies on the rule that a person has no general duty to safeguard another from harm or to rescue an injured person. But that rule has no application where the person has caused another to be put in a position of peril of a kind from which the injuries occurred. While "[t]here may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; . . . it is another thing entirely to eject him into the danger of a street or railroad yard; and if he is injured there will be liability." (Prosser & Keeton, Torts (5th ed. 1984) § 56, p. 378, fn. omitted.) That is the case here.

We shall conclude that Jason established triable issues of material fact as to the negligence and willful misconduct causes of action, that on the facts tendered a jury reasonably could infer that Sarah had acted to put an inebriated Jason in peril at the edge of a cliff. We shall reverse the summary judgment entered in favor of Sarah but affirm the summary adjudication of the assault and battery and intentional infliction of emotional distress causes of action.[3]

This is also a default judgment case. Unlike a summary judgment proceeding, no evidence is required to establish liability. (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281-282 (*Kim*).) A defendant's failure to answer the complaint admits the well-pleaded allegations of the complaint, and *no further proof of liability is required*. (§ 431.20; *Kim, supra,* at pp. 281-282.) The only additional proof required for a default judgment is that needed to establish damages. (See *Beeman v. Burling* (1990) 216

---

[3] We shall affirm the summary adjudication (as opposed to summary judgment) because we shall conclude that Jason established triable issues of material fact as to two of his four causes of action.

Cal.App.3d 1586, 1597; *Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1745.) That the plaintiff lacks evidence to *prove* the well-pleaded allegations of the complaint is of no consequence. (See *Kim, supra,* at pp. 281-282.)

Zach failed to respond to Jason's complaint, and a clerk's default was entered against him. After the trial court entered summary judgment in favor of Sarah, Jason filed a request for the entry of a default judgment against Zach. Following a "prove-up"[4] hearing, the trial court denied Jason's request and entered judgment in favor of Zach, finding that Jason "failed to prove his case against [him]." Jason contends the trial court erred because the well-pleaded allegations of material fact of his complaint state a cause of action against Zach.

We agree and shall reverse the judgment entered in Zach's favor and remand the matter to the trial court with directions to conduct a hearing to determine whether Jason can establish damages and, if so, to enter a default judgment for Jason and against Zach.

Finally, we shall affirm the postjudgment order denying Sarah's request for attorney fees as cost-of-proof sanctions. (§ 2033.420.)

FACTUAL AND PROCEDURAL BACKGROUND[5]

The facts alleged or tendered in a summary judgment proceeding perform two different functions. As material facts they measure whether the plaintiff has alleged a cause of action. As evidentiary facts they establish whether the material facts have been

---

[4] Generally, a plaintiff is required to *prove up* his damages at a prove-up hearing. (See *Kim, supra,* 201 Cal.App.4th at p. 272.) Here, however, the trial court required Jason to substantively "prove his case against [Zach]," and concluded Jason failed to meet that requirement. Accordingly, the trial court did not reach the issue of damages.

[5] We view the facts in the light most favorable to Jason as the losing party on summary judgment. (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 265.)

proved.[6]  (See *Teselle, supra,* 173 Cal.App.4th at p. 172.)  The facts are tendered as undisputed in "supporting papers" appended to the motion for summary judgment. (§ 437c, subd. (a).)  They appear in the form of admissible evidence in "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken."  (§ 437c, subd. (b)(1).)  The opposing papers appear in the same form and include a separate statement as to whether the facts in the supporting papers are disputed or undisputed.  (§ 437c, subd. (b)(2) & (3).)  "Evidentiary objections not made at the hearing shall be deemed waived."  (§ 437, subd. (b)(5).) While we may not weigh the admitted evidence as though we are sitting as a trier of fact, we "must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact.  . . .*  In so doing, [we do] not decide on any finding of [our] own, but simply decide[] what finding such a trier of fact could make for itself."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856, fn. omitted (*Aguilar*).)

The following facts are facts as to which no objection was made or sustained. They were tendered in Sarah's admissions, Sarah's deposition, Jason's deposition, Sarah's declaration,  Nicholas De la Cruz's declaration, Debbie Morton's declaration, and the "Statements of facts and truths" prepared by Sarah at the request of the dean of the

---

[6] A cause of confusion may arise from the use of the term "facts" to refer both to material facts and to evidentiary facts.  Material facts are facts to be proved to establish a cause of action.  (*Teselle, supra,* 173 Cal.App.4th at p. 172.)  Evidentiary facts are facts by which the material facts are proved.  (*Ibid.*)  Material facts are criterial, are elements of a cause of action, and define the cause of action in the circumstances of the case.  (See *ibid.*)  Whether a fact is one or the other depends on the function to be performed.  (See *ibid.*)  If the facts are used to establish a ground for relief, they are material.  If the facts are used to establish the truth of the material facts they are evidentiary.  (See *ibid.*)

Bethel School of Supernatural Ministry (Bethel), where she and Zach were students at the time of the incident.[7]

On the evening of October 4, 2008, Jason went to a party with his friend Nicholas De la Cruz. While there, Jason consumed alcohol and was "clearly intoxicated." De la Cruz had driven Jason to the party and felt responsible for ensuring he got home safely. De la Cruz's car had broken down as he and Jason arrived at the party; therefore, he asked his roommate Zach to drive Jason home, and Zach agreed. In Sarah and Zach's presence, De la Cruz told Jason that Sarah and Zach had agreed to drive him home.

Sarah had known Zach for about a year prior to the night in question. They both were students at Bethel and hung out a lot.

Jason left the party with defendants around 1:00 a.m. on the morning of October 5, 2008. Zach asked Jason if he wanted to go to "the Bluffs," a cliff overlooking the Sacramento River, and Jason said, "no." After leaving the party, they drove to Food Maxx, where Jason stole a fifth of rum. They then went to a second party, where Jason had a couple of shots of the rum. From there they drove to the Bluffs to watch the sunrise. Zach parked on the side of the road, and they walked to the Bluffs. Zach placed a blanket near the cliff's edge for the three of them to sit on. They sat on the blanket drinking the rum Jason had stolen. They were happy and joking around until Sarah brought up the death of her brother eight months earlier. Sarah told the others that her

_____

[7] Sarah objected to admissibility of the "Statements of facts and truths" but the trial court declined to rule on her objection. Accordingly, we may consider the document. (§ 437c, subd. (c).) In her respondent's brief, she notes that in the "Statements of facts and truths" she stated that "all times are just guesses . . ." However, she omits the remainder of her statement, which reads: "I cannot remember fully the times or details from 2 years ago, *but this is what I do remember to the best of my ability*." (Italics added.) Thus, we reject Sarah's suggestion that the statements contained in the "Statements of facts and truths" are unreliable. As relevant here, the principal difference between Sarah's deposition and the "Statements of facts and truths" is that at her deposition she claimed that she could not remember the timing of events.

brother had died after falling off a bridge while intoxicated. Jason laughed, which upset Sarah, who began crying and wanted to leave. Sarah eventually calmed down and returned to the blanket. Shortly after, Jason fell. According to Sarah, Jason fell within 30 minutes of their arrival at the Bluffs. Jason attempted to hang onto the edge of the cliff before losing his grip and falling. No one else was around when Jason fell, and, as far as Sarah knew, there were no other witnesses to the fall besides her and Zach. Sarah heard Jason fall down the cliff side and land on the rocks below.

After Jason fell, defendants grabbed the blanket and ran to the car. Once inside, Sarah told Zach, "[W]e need to call 911." They did not do so, however, because they were afraid they would get into trouble for being intoxicated or be accused of causing Jason's fall. At the time, Sarah was 18 or 19 years old. Instead, they attempted to locate Jason by driving closer to the Sacramento River, running through vegetation, and wading into the river. When the water reached Sarah's chest and she could feel the current, she decided she could not go any further. Defendants spent approximately one hour attempting to locate Jason. Sarah ripped her jeans, cut her left knee, and lost her shoes that morning. According to Sarah, she did so while attempting to locate Jason.

Next, defendants drove to Whiskeytown Lake, where they discussed Jason's "suicide." They returned to Redding at approximately 7:00 a.m. and went to Sarah's apartment complex where they attempted to warm up in the sauna. At approximately 8:30 a.m., Sarah telephoned her mother in Canada, telling her, " 'this guy committed suicide, he jumped.' " Her mother told her to " 'go to the police station right away, call 911.' " Defendants drove to the police station and reported the incident at approximately 9:20 a.m. Jason was located one-half hour later. Sarah admitted that "[s]everal hours passed after [Jason]'s fall from the cliff before [she] reported the incident to the Redding Police."

Earlier that morning, between 5:00 a.m. and 6:00 a.m., Debbie Morton, who lived near the Bluffs, heard a man and a woman yelling. The sounds came from the Bluffs.

7

She could not hear what they were saying, but said that "they were definitely screaming and yelling at each other."

Jason had no recollection of being at the Bluffs, much less anything that happened there. Sarah denied touching or threatening Jason while they were there or otherwise contributing to his fall. According to Sarah, a few minutes after she shared the story about her brother, Jason stood up, faced defendants, said something to the effect of, " 'I've had a hard life,' " and " 'You can't die in the will of God,' " and stepped backwards off the cliff.

Jason sued defendants, asserting causes of action for (1) assault and battery, (2) negligence, (3) willful misconduct, and (4) intentional infliction of emotional distress. Sarah answered the complaint with general denials and affirmative defenses. Zach did not respond, and Jason served him with a statement of damages seeking general damages in the amount of $20 million, special damages of at least $11 million, and punitive damages in the amount of $20 million. Thereafter, a clerk's default was entered against Zach.

Meanwhile, Sarah filed a motion for summary judgment, or in the alternative summary adjudication, based on the following contentions: (1) there was no triable issue of material fact that she neither assaulted nor battered Jason; (2) there was no triable issue of material fact that she had not breached any duty owed to Jason; (3) there was no triable issue of material fact that she had not engaged in any outrageous conduct; and (4) there was no triable issue of material fact that Jason had not suffered emotional distress as an actual and proximate result of her conduct. The trial court ruled that Jason failed to meet his burden because he had no recollection of being at the Bluffs, much less falling from the cliff, and it could not reasonably be inferred from the evidence that Sarah pushed or otherwise caused him to fall. The court further found that there was insufficient evidence to support a finding that Sarah placed Jason "in the perilous position of falling off the cliff," that a special relationship existed between Jason and Sarah such that Sarah owed

8

Jason a duty of care, or that Sarah engaged in any outrageous conduct. Accordingly, the trial court granted summary judgment in favor of Sarah.

Thereafter, the trial court issued an order directing Jason and his counsel to appear and show cause why Jason's action against Zach should not be dismissed for the following reasons: (1) Jason's counsel failed to appear at a case management conference; (2) Jason failed to seek entry of default judgment against Zach; and (3) a default judgment against Zach would be inconsistent with the trial court's ruling granting summary judgment in Sarah's favor. Jason responded by filing a "Judgment Packet Following Entry of Default," a request for entry of default judgment against Zach, and a brief and 35 exhibits in support of his request. Following a prove-up hearing, the trial court denied Jason's request for entry of default judgment against Zach because "[t]he elements of the four cause of actions pled are not proved by the admitted facts" or by the additional evidence submitted by Jason in support of his request.

Meanwhile, Sarah moved for attorney fees as cost-of-proof sanctions for Jason's asserted unreasonable refusal to admit the truth of certain pretrial requests for admissions. (§ 2033.420.) The trial court denied Sarah's motion, finding that while it disagreed with Jason's arguments presented in opposition to the motion for summary judgment, Jason had a good faith belief that he could prevail on the theories asserted.

## DISCUSSION

### I
### Summary Judgment Was Improvidently Entered in Sarah's Favor Because Jason Established Triable Issues of Material Fact as to the Negligence and Willful Misconduct Causes of Action

" 'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' [Citation.] 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: The function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues

9

delimited by the pleadings.' [Citations.] The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action. [Citation.]" (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 (*FPI*).) "The distinction between a material fact and its supporting evidence lies in the difference between an ultimate fact, an element of a cause of action, and an evidentiary fact which supports the existence of the element." (*Teselle, supra,* 173 Cal.App.4th at p. 172, fn. omitted.)

"The role of the pleadings in measuring materiality is supplemented by rules directly applicable to a summary judgment proceeding. The parties must submit 'separate statements' identifying each of the material facts in dispute with reference to the supporting evidence. (Code of Civ. Proc., § 437c, subd. (b).) The motion or opposition thereto must be supported by facts in the form of 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken.' (*Ibid*.) In a properly pleaded case this showing addresses the matters of fact put in issue by the pleadings, for properly drafted pleadings aver the ultimate facts which constitute the cause of action or defense thereto. [Citation.] In a summary judgment proceeding the factual submissions of the parties must track these averments by providing evidence of the ultimate facts averred. Because of this relationship, in the absence of an appropriate objection, some defects in the pleading of an ultimate fact may be remedied by resort to a factual showing in the summary judgment proceeding. In this manner the pleadings may be read together with the factual showings in the summary judgment proceeding for purposes of discerning what is in issue." (*FPI, supra*, 231 Cal.App.3d at p. 382.)

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence

10

set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (§ 437c, subd. (c).) A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. (*Teselle, supra,* 173 Cal.App.4th at pp. 168-169.) The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim. (*Id.* at p. 169; § 437c, subd. (p)(2).) To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 847-848.) " 'If a plaintiff pleads several theories, the defendant has the burden of demonstrating there are no material facts requiring trial on any of them.' " (*Teselle, supra,* 73 Cal.App.4th at p. 163.)

Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts. (*Teselle*, *supra*, 173 Cal.App.4th at pp. 168-169; § 437c, subd. (p)(2).) "In deciding whether a plaintiff has met h[is] burden of proof, we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the defendant." (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483.) "An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citation.] Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities [citation]. 'Thus, while the court in determining a motion for summary judgment does not "try" the case, the court is bound to consider the competency of the evidence presented.' [Citation.]" (*Sinai Memorial*

*Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197.) Responsive evidence that "gives rise to no more than mere speculation" is not sufficient to establish a triable issue of material fact. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)

We review a trial court's ruling on a summary judgment motion de novo. (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939-940.)

A. Assault and Battery

Jason's arguments on appeal focus primarily on his negligence cause of action and his assertion that Sarah owed him an affirmative duty to summon aid, an issue we address below. His remaining causes of action are addressed collectively in a single section at the end of his opening brief wherein he contends "[m]ultiple material issues of fact relating to [Sarah]'s role in placing [him] in peril at the bottom of the cliff precluded summary adjudication on all of the other causes of action." We address the assault and battery cause of action first because Jason's ability to pursue that cause of action bears upon his remaining causes of action. As noted, on summary judgment, the issues are determined by the pleadings, the rules of pleadings, and the substantive law. (*Teselle, supra,* 173 Cal.App.4th at p. 172.) We begin our analysis with the substantive law.

The elements of a cause of action for assault are: (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. (*So v. Shin* (2013) 212 Cal.App.4th 652, 668-669.) The elements of a cause of action for battery are: (1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was

harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the touching. (*Id.* at p. 669.)

As relevant here, the complaint alleges that "as a result of Defendants' contact with . . . [Jason] and/or through Defendants' creation of an imminent apprehension of such contact, [Jason] was knocked or pushed backwards, such that he began to fall over the edge of the cliff."

Sarah's summary judgment motion asserted that Jason had no evidence that he was knocked or pushed backwards causing him to fall over the cliff. In support of her assertion, she relied on the following facts: (1) Jason's admission that he had no memory of the events that took place at the Bluffs on October 5, 2008; and (2) her assertion, as set forth in her declaration, that she did not touch Jason, cause him to be touched, or threaten to touch him while they were at the Bluffs on October 5, 2008. Sarah's evidence was sufficient to shift the burden to Jason to create a triable issue of material fact because, if left uncontroverted, Jason would be unable to establish Sarah touched or threatened to touch him. (*See Thrifty Oil Co. v. Superior Court* (2001) 91 Cal.App.4th 1070, 1077 [Evidence is sufficient to shift the burden of proof to the opposing party if "standing alone, uncontroverted, and without submission of any issue to a trier of fact, [such evidence] would compel a . . . verdict" in the moving party's favor at trial.].)

In his opposition to the summary judgment motion, Jason admitted he had no memory of his fall or the events immediately preceding it, but he "[d]isputed" Sarah's other fact, namely that she did not touch, let alone push, him while they were at the Bluffs. In doing so, he cited the following facts: (1) Sarah became upset with him while they were at the Bluffs because he laughed when she told him about her brother's death, (2) Sarah's jeans were torn and she had a scrape on her left knee, (3) a woman living near the Bluffs heard a man and a woman arguing between 5:00 and 6:00 a.m. on October 5, 2008, (4) Sarah left the "scene" and delayed in reporting the incident to police, (5) the blanket they were sitting on and Jason's sweatshirt were found in Zach's car, and (6)

13

Sarah's inconsistent statements as to whether she owned a cell phone at the time of the incident.[8]  Based on these facts, Jason claimed it could be inferred that Sarah pushed him, causing him to fall off the cliff.  The inference is unreasonable.

"An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action."  (Evid. Code, § 600, subd. (b).)  An inference must be reasonable to raise a triable issue of material fact on summary judgment.  (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1529-1530.)  While we may not weigh Jason's evidence or inferences against Sarah's evidence as though we are sitting as a trier of fact, we "must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact. . . .*  In doing so, [we do] not decide on any finding of [our] own, but simply decide[] what finding such a trier of fact could make for itself."  (*Aguilar, supra,* 25 Cal.4th at p. 856, fn. omitted.)

Jason claimed that his response to news of Sarah's brother's death provided Sarah with a motive to "push [him] off the cliff," Sarah's torn jeans and scraped knee were evidence of a struggle at the top of the cliff, the early morning argument overheard by a neighbor was evidence Sarah and Zach returned "to clear the scene of evidence they had been there with Jason," Sarah's leaving the scene and delaying in reporting the incident "provide[d] direct evidence of flight and circumstantial evidence of guilt," the presence of the blanket and Jason's sweatshirt in Zach's car was evidence Sarah and Zach

---

[8]  There is no admissible evidence to support Jason's assertion that Sarah and Zach gave "contradictory descriptions of how [Jason] fell."  Sarah's objections to the police reports themselves were sustained, and Jason does not challenge the trial court's evidentiary ruling here.  Moreover, the portion of Sarah's deposition testimony cited by Jason reflects only that the police told Sarah that Zach said that Jason ran to the edge of the cliff, jumped into the air, and did a turn, and that Sarah did not agree with that version of how Jason fell.  In addition to constituting triple hearsay, Sarah's deposition testimony is not evidence that Zach actually told the police that is how Jason fell.

"deliberately tampered, destroyed and concealed evidence at the crime scene," and Sarah's inconsistent statements as to whether she owned a cell phone constituted a "deliberate attempt[] to deceive the police" and provided further evidence she "intended to conceal material evidence that would implicate her."

Whether considered individually or collectively, none of Jason's facts support a reasonable inference that he was assaulted or battered. As the trial court correctly found, Jason's claim that Sarah pushed him in a fit of anger, causing him to fall off the cliff, relies on inferences that are too speculative to create a triable issue of material fact. At best, Jason presented evidence that Sarah may have possessed the motive, opportunity, and means to push him off the cliff. But that is all. And that is not enough. Such evidence merely allows speculation about an altercation that may have resulted in Jason falling off the cliff. Speculation, however, is not evidence. (*Aguilar, supra,* 25 Cal.4th at p. 864.) The trial court did not err in summarily adjudicating the assault and battery cause of action.

B. Negligence

Jason contends the trial court erred in summarily adjudicating his second cause of action for negligence because (1) defendants, "by virtue of the pre-existing relation[ship] of the parties, owed [him] a duty to call 911 or otherwise summon aid for [him] after he fell from the cliff," and (2) "[m]ultiple material issues of fact [exist] relating to [Sarah]'s role in placing [him] in peril at the bottom of the cliff . . . ." As we shall explain, Jason created a triable issue of material fact as to whether Sarah breached a duty owed to Jason by bringing him to the cliff side when she knew he was intoxicated *and* waiting several hours to call 911 or otherwise summon aid after the fall.

The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages. (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106.) In California, "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of

15

his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714, subd. (a).) In other words, "each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . .' " (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 112.)

"As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some [special] relationship between them which gives rise to a duty to act." (*Williams v. State of California* (1983) 34 Cal.3d 18, 23 (*Williams*).) "Typically, in special relationships, 'the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare. [Citation.]' [Citation.] A defendant who is found to have a 'special relationship' with another may owe an affirmative duty to protect the other person from foreseeable harm, or to come to the aid of another in the face of ongoing harm or medical emergency." (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 325 (*Rotolo*), disapproved on other groups in *Verdugo v. Target Corp.* (June 23, 2014, S207313) ___ Cal.4th ___, ___ & fn. 15 [2014 Cal. Lexis 4319, 44-45 & fn. 15.)

The complaint alleges inter alia that defendants were negligent in that they "were directly involved in creating the conditions that placed [Jason] in peril; Defendants' affirmative acts were linked, and a substantial factor, in [Jason's] initial fall . . . ." The complaint also alleges that defendants owed Jason a duty to call 911 or otherwise summon aid after he fell due to "the nature of the special relationship among the parties," and because ". . . Defendants' conduct caused and/or contributed to place [Jason] in peril," and that defendants breached that duty by waiting several hours before reporting

16

the incident to police.[9]  According to the complaint, Jason's "presence at the edge of the cliff was closely connected with Defendants' conduct in inviting him, and driving him to this remote location."

Sarah's summary judgment motion asserted Jason could not establish his negligence cause of action because "the only admissible evidence establishes that Sarah . . . did nothing to cause or contribute to [Jason]'s fall," and she had no duty to call 911 or otherwise summon aid after Jason fell.  She cited the following facts in support of her assertions:  (1) Jason's admission that he had no memory of the events that took place at the Bluffs on October 5, 2008; (2) her assertion, as set forth in her declaration, that she did nothing to cause or contribute to Jason's fall; (3) there is no familial relationship between Sarah and Jason; (4) Jason first met Sarah on October 4, 2008; (5) Jason went to the Bluffs of his own free will; (6) at no time did Sarah agree to be responsible for plaintiff; (7) Jason fell as a result of his own conduct; (8) after Jason fell, Sarah and Zach initiated a search for him but were unable to reach him; and (9) at no time did Sarah conceal any of Jason's property with the intent of hiding evidence or delaying his discovery.  Sarah's evidence was sufficient to shift the burden to Jason to create a triable issue of material fact.

In his opposition to the summary judgment motion, Jason pointed to the following facts:  (1) defendants agreed to drive him home; (2) rather than drive him home, defendants took him to a remote cliff side; (3) defendants knew he was intoxicated when they brought him to the cliff side; (4) when asked if he wanted to go to the cliff, Jason

_____

[9]  In addition, the complaint alleges "that as a result of Defendants' negligence, including physical contact with . . . [Jason], [Jason] was knocked or pushed backwards such that he began to fall over the edge of the cliff."  For the reasons set forth above in the discussion of the assault and battery cause of action, Jason failed to establish a triable issue of material fact as to whether he was pushed or knocked, causing him to fall off the cliff. (*Ante,* at pp. 14-15.)

said, "no"; (5) Sarah and Zach had previously made plans to go to the Bluffs, and Zach had brought a large blanket to sit on; (6) Sarah had both the means and the opportunity to call 911 after Jason fell but chose not to because she was afraid she would be blamed for his fall; and (6) she left the scene and waited hours before contacting the police.

From these facts and the supporting evidence, a jury reasonably could infer that Sarah breached her duty of ordinary care owed to Jason, and as a direct and proximate result of her breach, Jason fell from the cliff. While "[t]here may be no duty to take care of a man who is ill or intoxicated, and unable to look out for himself; . . . it is another thing entirely to eject him into the danger of a street or railroad yard; and if he is injured there will be liability." (Prosser & Keeton, Torts, *supra,* § 56, p. 378, fn. omitted.) Although Sarah did not drive the car that transported Jason to the cliff, the evidence supports a finding that she played an active role in placing Jason in a position of peril. She and Zach were close friends and were together at the party. She was present when De la Cruz told Jason that she and Zach had agreed to drive him home. She knew Jason was highly intoxicated. She and Zach had previously planned to go to the Bluffs to watch the sunrise, and Zach had brought a large blanket for that purpose. She and Zach walked with Jason from the roadside to the Bluffs and sat on a blanket with him drinking the rum he had stolen. There is no indication Sarah objected to any of the actions that led to Jason being on the cliff side while in a highly intoxicated state; to the contrary, the evidence suggests she and Zach had planned to go to the Bluffs to watch the sunrise. Sarah was not a passive participant; the only thing she did not do was drive the car. Should a jury conclude that Sarah was responsible for Jason's fall, she had a legal duty to take affirmative action to assist or protect him after he fell. (See *Williams*, *supra*, 34 Cal.3d at p. 23.) A jury reasonably could conclude that Sarah breached that duty by waiting several hours before reporting his fall to police.

Jason's facts, if proved, also support a finding of a special relationship between Sarah and Jason. A special relationship arises from the facts of the case, from the

18

circumstances which create a peril. A jury reasonably could find that Jason, who was highly intoxicated, was in a particularly vulnerable state and dependent upon defendants for getting him home safely. (See *Rotolo, supra,* 151 Cal.App.4th at p. 325.) Should a jury conclude there was a special relationship, Sarah had a legal duty to take affirmative action to assist or protect Jason after he fell. (See *Williams, supra,* 34 Cal.3d at p. 23.)

While the complaint alleges "Defendants were directly involved in creating the conditions that placed [Jason] in peril," it does not allege the specific conditions that placed Jason in peril, and defendants did not demur on the ground of lack of specificity. Under these circumstances, where the complaint "has made out some intelligible but defectively pled claim, in the absence of an appropriate challenge we will examine the [plaintiff's] showing, treating it as supplementing the pleading where it is plausibly connected to the claim, to determine whether a legally cognizable [claim] has been made out." (*FPI, supra,* 231 Cal.App.3d at pp. 383-384.) As detailed above, Jason's showing made out a legally cognizable claim that Sarah breached her duty to use ordinary care by *participating in* bringing Jason, whom she knew was highly intoxicated, to the edge of a cliff. (*Ante,* at p. 18.)

For all the foregoing reasons, the trial court erred in summarily adjudicating the negligence cause of action.

C. Willful Misconduct

Jason contends "[m]ultiple material issues of fact relating to [Sarah]'s role in placing [him] in peril at the bottom of the cliff precluded summary adjudication" of his willful misconduct cause of action. We agree.

Willful misconduct is an aggravated form of negligence. (*New v. Consolidated Rock Products Co.* (1985) 171 Cal.App.3d 681, 689.) " 'Three essential elements must be present to raise a negligent act to the level of wilful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive

19

knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril. [Citations.]' [Citation.]" (*Id.* at pp. 689-690.)

In addition to incorporating the allegations set forth in his negligence cause of action into his willful misconduct cause of action, the complaint alleges that Sarah "consciously decided to forbear from calling 911" even though she "understood that immediate action to aid, assist or summon help was necessary" and "knew that further, aggravated, serious injuries were a probable result in any delay . . . ."

Sarah's summary judgment motion asserted there was no triable issue of material fact with respect to Jason's willful misconduct cause of action for essentially the same reason that there was no triable issue of material fact as to his negligence cause of action -- Sarah did not owe Jason a duty of care "as she did nothing to place him in peril and she had no 'special relationship' with him." Assuming for argument's sake that Sarah's evidence was sufficient to shift the burden to Jason to create a triable issue of material fact, Jason satisfied his burden. As detailed above, Jason created a triable issue of material fact as to whether Sarah breached a duty owed to Jason by bringing him to the cliff side when she knew he was intoxicated and waiting several hours to call 911 or otherwise summon aid after the fall. (*Ante,* at pp. 18-19.) Accordingly, the trial court also erred in summarily adjudicating the willful misconduct cause of action.

D. Intentional Infliction of Emotional Distress

Jason does not specifically address his intentional infliction of emotional distress cause of action in his briefs on appeal, arguing only that "[m]ultiple material issues of fact relating to [Sarah]'s role in placing [him] in peril at the bottom of the cliff precluded summary adjudication on *all of the other causes of action*." (Italics added.) As we shall explain, Jason's admission that he has no memory of being at the Bluffs, much less his fall, precludes him from prevailing on that cause of action.

"The elements of the tort of intentional infliction of emotional distress are: ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or

reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . ." Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.' [Citation.]" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 (*Christensen*); see also *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 (*Hughes*).)

In his complaint, Jason alleges that "[b]y the conduct alleged above [(in connection with his causes of action for assault and battery, negligence, and willful misconduct)], Defendants . . . acted outrageously, with the intention to cause, or with reckless disregard of the probability of causing [him] severe emotional distress," and that such "conduct actually and proximately caused [him] severe emotional distress."

Sarah's summary judgment motion asserted inter alia that Jason could not establish he suffered any emotional distress as a result of her conduct when, by his own admission, he has no memory of such conduct.

As previously discussed, Jason failed to establish a triable issue of material fact as to whether Sarah pushed or knocked him backwards, such that he began to fall over the edge of the cliff. (*Ante,* at p. 13.) He did, however, establish a triable issue of material fact as to whether Sarah created a peril by bringing him to the cliff side knowing he was intoxicated, and whether she breached a duty owed to protect or assist him by waiting a number of hours before reporting the incident to police. (*Ante,* at pp. 16-17.) Thus, the "conduct" we are concerned with here is bringing Jason, highly intoxicated, to the cliff side and delaying in reporting his fall. Assuming for argument's sake that such conduct was outrageous, Jason has no memory of it. He does not recall being at the Bluffs, much less his fall or waiting for help to arrive. Accordingly, Sarah's conduct could not be the actual and proximate cause of any mental distress he has suffered. In other words, a jury

21

could not reasonably conclude that Jason suffered mental distress as a result of Sarah's conduct when he has no memory of that conduct. Accordingly, summary adjudication was properly entered as to the intentional infliction of emotional distress cause of action.

This is not to say that Jason is precluded from recovering for any emotional distress he may have suffered. To the contrary, should he prevail on his negligence or willful misconduct causes of action, damages for emotional distress are recoverable. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 981 ["[I]t is settled in California that in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages."].)

## II
## The Trial Court Erred in Entering Judgment in Favor of Zach

Jason next contends the trial court erred in entering judgment in Zach's favor because the "complaint legally states a cause of action against him." We agree.

Section 585, subdivision (b) states that after a defendant fails to answer the complaint and does not file a demurrer, enumerated motions, or a petition for writ of mandate, the clerk of the court, upon plaintiff's written application, shall enter the default of defendant. "The plaintiff thereafter may apply to the court for the relief demanded in the complaint. The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115, as appears by the evidence to be just." (§ 585, subd. (b).)

A defendant's failure to answer the complaint has the same effect as admitting the well-pleaded allegations of the complaint, and as to these admissions *no further proof of liability is required.* (§ 431.20, subd. (a); *Kim, supra,* 201 Cal.App.4th at pp. 281-282.) Thus, in a default situation such as this, if the complaint properly states a cause of action, the only additional proof required for the judgment is that needed to establish the amount

22

of damages.  (See *Beeman v. Burling*, *supra*, 216 Cal.App.3d at p. 1597; see also *Ostling v. Loring*, *supra*, 27 Cal.App.4th at p. 1745.)

"The 'well-pleaded allegations' of a complaint refer to ' " 'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " ' [Citations.]" (*Kim, supra*, 201 Cal.App.4th at p. 281.)  A well-pleaded complaint "set[s] forth the ultimate facts constituting the cause of action, not the evidence by which plaintiff proposes to prove those facts." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211-212, fn. omitted; see also *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 ["[T]he complaint ordinarily is sufficient if it alleges ultimate rather than evidentiary facts."].)  "The complaint delimits the legal theories a plaintiff may pursue and the nature of the evidence which is admissible. [Citation.]  'The court cannot allow a plaintiff to prove different claims or different damages at a default hearing than those pled in the complaint.'  [Citation.]" (*Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1182.)  Thus, the plaintiff cannot supplement the general allegations of the complaint by reference to the plaintiff's showing in the summary judgment proceeding. (Cf. *FPI, supra*, 231 Cal.App.3d at pp. 383-384.)

On January 12, 2011, the complaint and a statement of damages were personally served on Zach.  The statement of damages advised Zach that Jason was seeking general damages in the amount of $20 million ($10 million for pain, suffering, and inconvenience, and $10 million for emotional distress), special damages in an amount in excess of $11 million ($5 million for medical expenses, $3 million for future medical expenses, $3 million for loss of future earning capacity, and yet to be determined amounts for lost earnings to date, rehabilitation, health care, household, and other special damages), and punitive damages in the amount of $20 million.  On April 27, 2011, Jason requested entry of Zach's default.  That same day, the court clerk entered Zach's default.  After summary judgment was entered in Sarah's favor, the trial court issued an order

23

directing Jason and his counsel to appear and show cause why Jason's action against Zach should not be dismissed for the following reasons: (1) Jason's counsel failed to appear at a case management conference; (2) Jason failed to seek entry of default judgment against Zach; and (3) a default judgment against Zach would be inconsistent with the trial court's ruling granting summary judgment in Sarah's favor. Jason responded by filing a "Judgment Packet Following Entry of Default," a request for entry of default judgment against Zach in the amount of $30 million ($10 million for special damages and $20 million for general damages), and a brief and 35 exhibits in support of his request. In addition to evidence of damages, Jason submitted numerous exhibits aimed at establishing Zach's liability, including most, if not all, of the evidence submitted in opposition to Sarah's summary judgment motion.

Following a prove-up hearing (see *ante*, fn. 4), the trial court issued a "Final Decision Re Request For Entry of Default Judgment Against Defendant Zachary Gudelunas." As an initial matter, the court found "[t]he request to enter default judgment does not exceed the amount set forth in the statement of damages. Therefore, the due process requirement of notice to defendant of potential consequences of entry of default was satisfied by service of the statement of damages." The court, however, denied Jason's request to enter a default judgment against Zach and entered judgment in Zach's favor, finding Jason "failed to prove his case" against Zach. More particularly, the court found "[t]he elements of the four cause of actions pled are not proved by the admitted facts" or the evidence submitted by Jason in support of his request. Given its conclusion, the trial court did not address the issue of damages.

To the extent the trial court's order to show cause could be understood to request Jason to tender evidentiary facts supporting the complaint's allegations of liability, the trial court erred. The only evidentiary facts that have a place at a prove-up hearing are those concerning the damages alleged in the complaint. (See *Kim, supra,* 201 Cal.App.4th at pp. 281-282; *Beeman v. Burling, supra,* 216 Cal.App.3d at p. 1597;

24

*Ostling v. Loring, supra,* 27 Cal.App.4th at p. 1745.) The damages, of course, may only be awarded for a well-pled cause of action, and to that end, the complaint must be examined. (§431.20, subd. (a); *Kim, supra,* 201 Cal.App.4th at pp. 281-282.)

Accordingly we look to the allegations of the complaint.

A. Assault and Battery

The trial court concluded "[t]he admitted facts . . . fail to prove that [Zach] touched [Jason], or that he did any act which would have made [Jason] reasonably believe he was about to be touched, or that he threatened to touch [Jason]." In reaching this conclusion, the trial court appears to have confused legal conclusions with material facts. The complaint alleges that "as a result of Defendants' contact with . . . [Jason] and/or through Defendants' creation of an imminent apprehension of such contact, [Jason] was knocked or pushed backwards, such that he began to fall over the edge of the cliff." Those are material facts and are sufficient to allege the touching element of a battery cause of action and the imminent apprehension element of an assault cause of action. Jason was not required to allege how he would prove those ultimate facts. (See, e.g., *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390.)

We review the trial court's ruling and not its reasoning. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) While not discussed by the trial court, the complaint fails to allege that Jason did not consent to defendants' conduct, a necessary element of battery and assault. (See *So v. Shin, supra,* 212 Cal.App.4th at pp. 668-669.) Nor can such a lack of consent be inferred from the express allegations. (See *Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.) Had Jason alleged defendants intentionally pushed or knocked him off the cliff, one arguably could infer that he did not consent to such contact. But that is not what Jason alleges.

25

He alleges that "as a result of Defendants' contact . . . and/or through . . . [the] imminent apprehension of such contact, [he] was knocked or pushed backwards, such that he began to fall over the edge of the cliff." While the complaint fails to specify the conduct to which it refers, the two immediately preceding paragraphs suggest the conduct may have been consensual: "15. [Sarah] told the police that after this perceived insult, [Jason] then challenged [Zach], who boxes as a hobby, to a fight. [Zach] denied that any such conversation regarding boxing or fighting took place. [¶] 16. [Jason] is informed and believes that [Sarah] later told the police that in the brief period of time before his fall from the cliff, she had told [Jason] of her brother's death under very similar circumstances, [Jason] had laughed, [Sarah] became upset, boxing was discussed and then [Jason] backed up and over the edge of the cliff." These allegations suggest Jason was knocked or pushed off the cliff during a scuffle that he not only consented to, but instigated. Because the complaint fails to allege a necessary element of assault and battery, Jason is not entitled to judgment against Zach as to that cause of action. (*Rose v. Lawton* (1963) 215 Cal.App.2d 18, 20.)

B. Negligence

Negligence requires a plaintiff to prove duty, breach of duty, proximate cause, and damages. (*Lockheed Martin Corp. v. Superior Court, supra,* 29 Cal.4th at p.1106.) In California, "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714, subd. (a).) In other words, "each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . .' " (*Parsons v. Crown Disposal Co.*, *supra*, 15 Cal.4th at p. 472, quoting *Rowland v. Christian*, *supra*, 69 Cal.2d at p. 112.) However, "a person who has not created a peril is not liable in tort merely for failure to take

affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." (*Williams*, *supra*, 34 Cal.3d at p. 23.)

The complaint alleges inter alia that defendants breached their duty to use ordinary care by "knock[ing] or push[ing] [him] backwards, such that he began to fall over the edge of the cliff," and as a direct and proximate result, Jason suffered general and special damages. These allegations are sufficient to state a cause of action against Zach for ordinary negligence. Where, as here, the complaint properly states a cause of action, further proof of liability is not required. (*Kim, supra,* 201 Cal.App.4th at pp. 281-282.)

The complaint further alleges that defendants owed Jason a duty to call 911 or otherwise summon aid after he fell because ". . . Defendants' conduct caused and/or contributed to place [Jason] in peril," defendants breached that duty by waiting several hours before reporting the incident to police, and as a result, Jason's already severe injuries were aggravated. These allegations likewise are sufficient to state a claim for negligence. Having placed Jason in a position of peril by "knock[ing] or push[ing] [him] backwards, such that he began to fall over the edge of the cliff," Zach owed him a duty to call 911 or otherwise summon aid, which he breached by waiting several hours to report the incident to police. Although this is a different theory of peril than what sufficed to constitute negligence in the summary judgment proceeding, it is contained in the allegations of the complaint.

C. Willful Misconduct

A negligent act rises to the level of willful misconduct when the following additional elements are present: " '(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril. [Citations.]' [Citation.]" (*New v. Consolidated Rock Products Co.*, *supra*, 171 Cal.App.3d at pp. 689-690) The complaint alleges Zach "consciously decided to forbear from calling 911" even though he "understood that immediate action to aid, assist or

27

summon help was necessary" and "knew that further, aggravated, serious injuries were a probable result in any delay . . . ." These allegations coupled with those set forth in his negligence cause of action are sufficient to state a cause of action for willful misconduct. (*Ibid.*)[10]

D.  Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress requires a plaintiff to prove: " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . ." Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.' [Citation.]" (*Christensen, supra,* 54 Cal.3d at p. 903; see also *Hughes, supra,* 46 Cal.4th at p. 1050.)

The complaint alleges that "[b]y the conduct alleged above, Defendants, and each of them, acted outrageously, with the intention to cause, or with reckless disregard of the probability of causing [Jason] severe emotional distress," "[t]his conduct actually and proximately caused [Jason] severe emotional distress," and as a result, he has suffered damages. The conduct alleged above includes the following: causing Jason to fall over the edge of the cliff; knowing Jason was in immediate need of assistance; the ability to

---

[10] California has rejected the legal theory form of pleading. "It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery . . . ." (*Zellner v. Wassman* (1920) 184 Cal. 80, 88, disapproved on other grounds in *Sterling v. Taylor* (2007) 40 Cal.4th 757, 769-770; 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 413, pp. 551-552.) Accordingly, the allegations tendered under various legal theories may be combined to state a cause of action.

summon aid with minimal effort and under no risk of danger; knowing that Jason would not otherwise be discovered "at that time due to the early morning hour and remote location of the incident"; making a conscious decision not to summon aid "for selfish and/or unreasonable reasons"; and taking steps to delay Jason's discovery by others, such as removing Jason's belongings from the cliff side. Those allegations sufficiently state a cause of action for intentional infliction of emotional distress. (See *Christensen, supra*, 54 Cal.3d at p. 903.)

Because the complaint states causes of action for negligence, willful misconduct, and intentional infliction of emotional distress, judgment was erroneously entered in Zach's favor. We reverse that judgment and remand the matter for a hearing in which the trial court will hear Jason's evidence of damages, and if it determines that he has established his damages, it will enter a default judgment for Jason and against Zach.

### III
### The Trial Court Did Not Abuse its Discretion in Denying Sarah's Request for Attorney Fees

Claiming the trial court erred in finding that Jason had a good faith belief that he could prevail on the theories asserted, Sarah cross-appeals from the trial court's postjudgment order denying her request for attorney fees as cost-of-proof sanctions. (§ 2033.420.) We discern no abuse of discretion.

Section 2033.420, subdivision (a) states: "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and *if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter*, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." (Italics added.) The trial court must make such order unless it finds (1) an objection to the request was sustained or a response to it was waived under section 2033.290, (2) the

29

admission sought was of no substantial importance, (3) the party failing to make the admission had reasonable ground to believe that that party would prevail on the matter, or (4) there was other good reason for the failure to admit. (§ 2033.420, subd. (b).) " 'On appeal, the trial court's decision will not be reversed unless the appellant demonstrates that the lower court abused its discretion.' [Citation.] '[O]ne of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice. . . .' " (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10.) "Under the deferential abuse-of-discretion review, we have no authority to substitute our own decision for that of the trial court. [Citation.] Our inquiry is limited to determining whether the trial court's decision exceeds the bounds of reason." (*American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 269.)

Here, Sarah's motion for attorney fees was based on Jason's asserted unreasonable refusal to admit the truth of six pretrial requests for admissions. Those requests asked Jason to admit that (1) Sarah did not assault him as alleged in the complaint, (2) Sarah did not batter him as alleged in the complaint, (3) Sarah did not owe him a duty of care as alleged in the complaint, (4) Sarah was not negligent as alleged in the complaint, (5) Sarah did not engage in willful misconduct as alleged in the complaint, and (6) Sarah did not intentionally inflict emotional distress on him as alleged in the complaint. Jason denied each of the requests. To prove Jason's refusal to admit the truth of those requests for admissions was unreasonable, Sarah relied on the summary judgment entered in her favor. In denying Sarah's request for attorney fees, the trial court explained that although it disagreed with Jason's arguments presented in opposition to the summary judgment, it found he had a good faith belief that he could prevail on his causes of action.

As detailed above, Jason established triable issues of material fact as to his negligence and willful misconduct causes of action. Three of the six requests for admission at issue here concern those claims. Thus, it cannot be said that Sarah proved the truth of those matters. The remaining requests concerned Jason's assault and battery

and intentional infliction of emotional distress causes of action.  Although we affirm the summary adjudication of those causes of action, we cannot say that the trial court exceeded the bounds of reason in concluding that Jason had a reasonable basis to believe that he would prevail on them.  Accordingly, the trial court's postjudgment order denying Sarah's request for attorney fees is affirmed.

DISPOSITION

The summary judgment entered in Sarah's favor is reversed.  Summary adjudication of the negligence and willful misconduct causes of action is reversed.  Summary adjudication of the assault and battery and intentional infliction of emotional distress causes of action is affirmed.  The judgment entered in Zach's favor is reversed, and the matter is remanded with directions to the trial court to conduct a hearing in which it will hear Jason's evidence of damages, and if it determines that he has established his damages, it will then enter a default judgment for Jason and against Zach.  The postjudgment order denying Sarah's request for attorney fees is affirmed.  The parties shall bear their own costs on appeal, and Jason shall recover his costs on cross-appeal. (Cal. Rules of Court, rule 8.278(a).)


    BLEASE    , Acting P. J.


We concur:


    BUTZ    , J.


    MAURO    , J.

31