[No. C028573. Third Dist. Jan. 17, 2001.]

CENTURY-NATIONAL INSURANCE COMPANY, Plaintiff and Respondent, v.
JAMES GLENN, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, VI, and VII.

## COUNSEL

Thomas M. Witte for Defendant and Appellant.

Thayer, Harvey, Hodder & Gregerson, Dale H. Thayer and Robert C. Martin for Plaintiff and Respondent.

## OPINION

**CALLAHAN, J.**—An insured purchased a homeowners policy containing an exclusion for bodily injury that is "a foreseeable result of an intentional or criminal act of any insured . . . ." During a disturbance at a party, the insured, holding a gun, chased a group of youths from his backyard and fired the gun to frighten them. The bullet struck James Glenn as he fled. The insured pleaded guilty to felony willful discharge of a firearm.

Granting a motion for summary judgment, the trial court held the criminal acts exclusion barred coverage on these facts. We agree and affirm a declaratory judgment in favor of the insurer.

### BACKGROUND

At all relevant times, Jeffrey Scott Stephens held a homeowners insurance policy with Century-National Insurance Company (Century). The policy contains an exclusion for bodily injury "which is a foreseeable result of an intentional or criminal act of any insured or which is expected or intended by any insured, including bodily injury . . . which is more extensive than or of a different nature from that expected or intended by the insured."

The dispute arises from a birthday party held at Stephens's house for his 19-year-old son. During the party, alcohol was consumed by some of the underage attendees. A fight broke out in the backyard. Stephens came outside to break up the fight, and became embroiled in the altercation. Stephens then pulled out a gun and began chasing the youths from his property. Someone yelled that Stephens had a gun, and the crowd began to run away. Stephens fired the gun and the bullet struck James Glenn, who was shot in the back of the right leg as he fled. Stephens later told an

investigating officer he intentionally fired the gun in order to " 'scare' the kids off [his property]."

As a result of the shooting incident, Stephens pleaded no contest to willful discharge of a firearm (Pen. Code, § 246.3), a felony.[1]

PROCEDURAL HISTORY

Glenn filed suit against Stephens for the injuries he sustained as a result of the shooting. Stephens tendered defense of the suit to Century, which accepted the tender. Glenn, Stephens, and Century thereafter entered into a three-way settlement. Under the terms of the settlement agreement Glenn dismissed his suit against Stephens and released all claims against him; Century paid Glenn $20,000 and his brother $1,000;[2] the remaining $79,000 of the $100,000 policy limit was paid in trust to Century's attorney. Century and Glenn agreed the trust money would be paid to whoever prevailed in a declaratory relief action which Century would file for the purpose of obtaining a judicial determination of whether the shooting was covered by Stephens's homeowners policy. Century stipulated, for purposes of the declaratory relief action only, that Glenn's damages exceeded the policy limits.

In January 1997, Century commenced this action for declaratory relief naming both Stephens and Glenn as defendants. Glenn answered and prayed for a declaration of policy coverage in his favor. Century ultimately dismissed Stephens from the action.

Century moved for summary judgment, contending there was no insurance coverage for the incident as a matter of law, and that Century was entitled to a declaratory judgment in its favor. Glenn opposed the motion and brought a countermotion for judgment on the pleadings and to dismiss.

The trial court entered judgment in Century's favor. The court ruled the "criminal acts" exclusion operated to bar insurance coverage for the incident. Glenn's countermotion, treated by the court as a motion for summary judgment, was denied. Glenn's subsequent motion for new trial was also denied.

---

[1]Penal Code section 246.3 (section 246.3) provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison."

[2]The brother's claim was based on emotional distress as a result of witnessing the shooting.

I-IV*

. . . . . . . . . . . . . . . . . . . . . . . . .

V

*Criminal Acts Exclusion*

We now turn to whether coverage for the shooting of Glenn was barred by the criminal acts exclusion of Century's policy. A motion for summary judgment will be granted if the moving papers establish that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review orders granting or denying a summary judgment motion de novo. ■ (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404].)

■ "Insurance policies are contracts to which ordinary rules of contractual interpretation apply. [Citations.] The goal of contract interpretation is to give effect to the mutual intent of the parties. (Civ. Code, § 1636.) If contract language is clear and explicit, we ascertain this intent from the written provisions and go no further. [Citation.] . . . [¶] . . . [¶] Where . . . there is no conflicting extrinsic evidence, the interpretation of an insurance policy is a legal issue to be decided by the court. [Citations.]" (*Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 28-29 [76 Cal.Rptr.2d 113].)

■ "In order to conclude that an ambiguity exists which will be construed against an insurer, it is necessary first to determine whether the coverage under the policy, which would result from such a construction, is consistent with the insured's *objectively reasonable expectations*. [Citation.] In order to do this, the disputed policy language must be examined *in context* with regard to its intended function in the policy. [Citation.] This requires a consideration of the policy as a whole, the circumstances of the case in which the claim arises and 'common sense.' [Citation.]" (*Nissel v. Certain Underwriters at Lloyd's of London* (1998) 62 Cal.App.4th 1103, 1111-1112 [73 Cal.Rptr.2d 174], italics original.)

The operative facts for purposes of Century's summary judgment motion are: (1) Stephens chased a group of youths from his backyard holding a gun;

---

*See footnote, *ante*, page 1392.

(2) Glenn was one of those fleeing from Stephens; (3) Stephens fired his gun intentionally for the purpose of frightening the youths; (4) Glenn was struck by the bullet fired by Stephens; and (5) Stephens pleaded guilty to violating section 246.3, a felony.

 The subject exclusion bars coverage for bodily injury which is the "foreseeable result" of a "criminal act" of the insured.[6] In *20th Century Ins. Co. v. Stewart* (1998) 63 Cal.App.4th 1333, 1338 [74 Cal.Rptr.2d 492], the Court of Appeal held that a homeowners policy exclusion for " '[b]odily injury . . . which is a foreseeable result of an intentional or criminal act of any insured or which is in fact intended by any insured' " was unambiguous. (*Id.* at p. 1336.) There is no material difference between that clause and the one at bar. Moreover, Stephens does not assert on appeal that the clause was ambiguous.

We thus turn to the question of whether, on the undisputed facts in this case, the bodily injury suffered by Glenn was a "foreseeable result" of a criminal act by Stephens. The answer to this question must be affirmative.

Stephens's nolo contendere plea has the same effect as a guilty plea for purposes of this action. (*Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 673 [53 Cal.Rptr.2d 18].) Although it does not have collateral estoppel effect, Stephens's no contest plea and conviction constituted admissible evidence that he committed the crime as described in the statute (*ibid.*), i.e., that he "willfully" fired his weapon in a manner which could "result in injury or death." (§ 246.3.) In using the term "willfully" the Legislature interposed the requirement that the defendant fire his weapon "purposefully or intentionally" (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1439 [35 Cal.Rptr.2d 155]). Such a requirement is patently inconsistent with the notion that the weapon was fired inadvertently or by accident.

Stephens could not reasonably expect insurance coverage for committing felony willful discharge of a firearm under the facts shown in the face of an exclusion for "criminal acts" which have the "foreseeable result" of causing bodily injury. Serious injury or death to an innocent bystander from the reckless discharge of a firearm is precisely the type of harm which the Legislature sought to deter in enacting section 246.3. (See *People v. Alonzo* (1993) 13 Cal.App.4th 535, 539-540 [16 Cal.Rptr.2d 656].) This was made abundantly clear in *People v. Clem* (2000) 78 Cal.App.4th 346, 348 [92

---

[6]For purposes of our discussion, we disregard that portion of the exclusion which bars coverage for bodily injury resulting from any "intentional" act of the insured, or injury "which is expected or intended by any insured, including bodily injury . . . which is more extensive than or of a different nature from that expected or intended by the insured." The trial court placed no reliance on this aspect of the exclusion, nor do we.

Cal.Rptr.2d 727] where the appellate court held that a violation of section 246.3 "is an offense 'inherently dangerous to human life' which will support a conviction of second degree murder." In so holding, the court declared: "[S]ection 246.3 *presupposes that there are people in harm's way.* Since the offense involves gross negligence ' "which could result in injury or death to a person," ' it must appear that the defendant's act 'actually had the potential for culminating in personal injury or death.' [Citation.]" (*Clem*, at pp. 351-352, italics added.)

 Glenn introduced no evidence contradicting Stephens's admission that he intentionally fired his weapon at a crowd of youths who were running away. Nor was there any viable claim of self-defense or other justification, as evidenced by Stephens's no contest plea to the crime. As a matter of law, the injury to Glenn was a direct and "foreseeable result" of the criminal act by Stephens, which is barred by the criminal acts exclusion.

VI, VII*

· · · · · · · · · · · · · · · · · · · · · · · · · · ·

DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 2, 2001.

*See footnote, *ante*, page 1392.