Filed 3/30/15  P. v. Ferguson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE ex rel. GREAT AMERICAN INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SULTANA FERGUSON,<br><br>    Defendant and Appellant. | G050696<br><br>(Super. Ct. No. RIC502479)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Mac R. Fisher and Daniel A. Ottolia, Judges.  Affirmed in part and reversed in part.

Law Office of Jeanne Collachia and Jeanne Collachia for Defendant and Appellant.

Parker Straus, Marvin J. Straus and Rosalee A. Burrell for Plaintiff and Appellant.

\*          \*          \*

Great American Insurance Company (Great American) sued its insured, Sultana Ferguson (Sultana), alleging she submitted a fraudulent insurance claim that greatly inflated the losses she suffered in a fire at her horse ranch.[1]  While this action was pending, Sultana pleaded guilty to one count of felony insurance fraud.  Based on Sultana's guilty plea, the trial court granted Great American summary adjudication on its insurance fraud cause of action and awarded it the $532,000 it paid Sultana on her insurance claim.  Following a bench trial on the remaining causes of action, the trial court awarded Great American an additional $532,000 in "treble damages" under Insurance Code section 1871.7 (Section 1871.7).  The court also placed a constructive trust on real property located in Sulphur Springs, Texas because it found Sultana at least partially purchased and improved the property with the funds she obtained from Great American.  Both sides appeal.

On Sultana's appeal, we affirm the trial court's judgment granting Great American summary adjudication on its insurance fraud claim.  Contrary to Sultana's contention, her guilty plea satisfied Great American's initial burden on its summary adjudication motion because her guilty plea constitutes an admission of all the elements required to establish insurance fraud, and Sultana failed to present any opposing evidence to create a triable issue of fact.  We reverse the trial court's judgment awarding Great American a constructive trust on Sultana's real property in Texas, however.  Under long

---

[1]     The full title for the plaintiff in this action is The People ex rel. Great American Insurance Company because the complaint included a statutory claim for penalties, assessments, and attorneys fees that must be brought in the state's name.  For convenience we refer to Great American as the plaintiff because it is the party that brought and litigated this action.

We refer to Sultana by her first name to eliminate any confusion because her husband also is involved in this action and shares the same last name.  No disrespect is intended.  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1486, fn. 1.)

established authority, California courts lack jurisdiction to make any judgment or order affecting title to real property in another state, and a constructive trust creates a lien on property that affects title.

On its appeal, Great American complains the trial court's decision is inconsistent or ambiguous because the court acknowledged Sultana was subject to "treble damages at three times the amount of the fraud," but only awarded Great American two times the amount of Sultana's fraudulent insurance claim. We affirm the trial court's judgment because the decision is not ambiguous when read in context, and Great American nonetheless forfeited the issue by failing to raise it in the trial court. Moreover, Section 1871.7 authorized the court to award "not more than three times" the amount of Sultana's fraudulent claim, and Great American fails to explain why the amount awarded was inappropriate. (§ 1871.7, subd. (b).)

I

FACTS AND PROCEDURAL HISTORY

Sultana and her husband Gary (collectively, Fergusons) lived on a horse ranch they owned in Temecula, California. In 1998, the couple moved to Arizona when an Arabian horse ranch hired Gary to be its head trainer. Rather than sell their Temecula ranch, the Fergusons rented the fully-furnished property to tenants. In 2002, the couple returned to California after Gary's contract ended, but they moved into another property they owned. In mid-2004, the Fergusons again moved out of California, this time to Texas to be closer to their family. The Chavez family rented the Temecula ranch at the time the Fergusons moved to Texas, but the Chavezes vacated the property at the end of September 2004.

Sultana insured the Temecula ranch under a policy she purchased from Great American in August 2004. The policy named Sultana as the insured and listed Gary as an additional insured. In early November 2004, an electrical fire at the Temecula

3

ranch burned the residence to the ground. Sultana reported the fire to Great American and submitted a claim for loss of the residential structure, all furnishings and personal property in the residence, and the rental income from the property. To support her claim, Sultana provided a seven-page handwritten list of the furnishings and other personal property items she claimed were destroyed in the fire. She also submitted a September 2004 lease for the property at $6,000 per month. Between December 2004, and April 2005, Great American paid Sultana approximately $532,000 on her claim, including $341,000 for structural damage, nearly $12,000 for debris removal and landscape repairs, nearly $112,000 for the lost furnishings and personal property, and approximately $67,500 for lost rental income.

A few days before the fire at the Temecula ranch, the Fergusons purchased more than 180 acres of vacant land in Sulphur Springs, Texas. They later built a barn, house, and other structures on the Texas property. By the time of trial, the Fergusons had sold all their other properties to construct a home on the Texas ranch, making it the only real property or significant asset they owned.

In October 2005, Ms. Chavez contacted Great American because she heard about the fire at the Temecula ranch from an insurance agent who represented her and the Fergusons. She explained she and her family had rented the property until about a month before the fire, and based on her experience with the property she believed the Fergusons inflated the amount of their loss. Great American started an investigation to determine whether Sultana submitted a fraudulent insurance claim.

In June 2008, Great American sued the Fergusons, asserting claims for insurance fraud under Section 1871.7, conversion, fraud, and intentional misrepresentation, and asked for a constructive trust and equitable lien. Great American alleged Sultana fraudulently inflated the amount of her claim, citing the property list and lease Sultana submitted to support her claim.

4

Great American moved for summary judgment on its complaint against the Fergusons. Although the trial court found the Fergusons' insurance claim included items not destroyed in the fire, the trial court denied Great American's motion because it failed to present sufficient evidence establishing the amount of its damages. While Great American's summary judgment motion was pending, the Riverside District Attorney filed a criminal information charging Sultana with five felony counts of insurance fraud under Penal Code section 550. In December 2011, Sultana pleaded guilty to count 5, "willfully and unlawfully present[ing] or caus[ing] to be presented any written or oral statement as part of, or in support of or opposition to a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

Based on Sultana's guilty plea, Great American filed a motion seeking summary adjudication against Sultana on its claim for insurance fraud under Section 1871.7, and summary adjudication against both Sultana and Gary on the constructive trust and equitable lien claims. Sultana opposed the motion, arguing Great American failed to meet its initial burden because her guilty plea did not conclusively establish civil liability. Sultana, however, did not cite any evidence to support her opposition. The trial court granted Great American's motion on the insurance fraud claim, but denied it as to the constructive trust and equitable lien claims. Based on Section 1871.7, the court awarded Great American $532,000 in damages, $5,000 in civil penalties, and attorneys fees and costs.

In October 2012, the trial court conducted a bench trial on the remaining claims. The court issued a tentative decision awarding Great American an additional $532,000 against Sultana as "treble damages," and directly placed a constructive trust and equitable lien on Sultana's interest in the Texas property, but denied Great American any relief against Gary. In December 2012, the court adopted its tentative decision as the

5

judgment.  Sultana timely appealed, and Great American cross-appealed to challenge the amount awarded as treble damages.

## II

## DISCUSSION

A.    *The Trial Court Properly Granted Summary Adjudication on Great American's Insurance Fraud Cause of Action*

1.    Governing Summary Adjudication Principles

"""The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute." [Citation.]'" (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 888 (*Carlsen*).)  A party may seek summary adjudication on whether a cause of action, affirmative defense, or punitive damages claim has merit or whether the defendant owed a duty to the plaintiff.  (Code Civ. Proc., § 437c, subd. (f)(1).)  "A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment."  (*Id*. at § 437c, subd. (f)(2).)

"The moving party 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.]" (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 630 (*Lawlor*).)  "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]  No more is called for." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 (*Aguilar*).)

"To meet that burden, a plaintiff seeking summary adjudication on a cause of action must present evidence sufficient to establish every element of that cause of action.  A plaintiff's initial burden, however, does not include disproving any affirmative defenses the defendant asserts.  'Once the plaintiff . . . has met [its] burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists

6

as to that cause of action or a defense thereto.' [Citations.]" (*Lawlor, supra,* 222 Cal.App.4th at pp. 630-631.)

"A triable issue of material fact exists '"if, and only if, the *evidence* would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.] . . . [Citation.]' [Citation.]" (*Lawlor, supra,* 222 Cal.App.4th at p. 631, italics added.) '"An issue of fact can only be created by a conflict of evidence. . . . [Citation.]"' (*Carlsen, supra,* 227 Cal.App.4th at p. 889.) Indeed, "[t]he party opposing the summary [adjudication] must make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact if the moving party's evidence, standing alone, is sufficient to entitle the party to judgment. [Citations.] To avoid summary [adjudication], admissible evidence presented to the trial court, not merely claims or theories, must reveal a triable, material factual issue. [Citation.]" (*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 10-11 (*Wiz Technology*); see *Carlsen,* at p. 888.) "A party cannot defeat summary judgment by the expedient of averring he or she has evidence to support a cause of action; instead, such evidence must be presented in opposition to summary judgment." (*Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 616 (*Uhrich*).)

"We review de novo a trial court's ruling on a summary adjudication motion. [Citation.] '"[I]n practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary [adjudication]." [Citation.] "Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct." [Citation.]' [Citations.]" (*Lawlor, supra,* 222 Cal.App.4th at p. 631.)

7

## 2. Great American Met Its Initial Burden

Great American's first cause of action for insurance fraud alleged Sultana violated Section 1871.7 by knowingly preparing and submitting false documents to support her insurance claim. According to Great American, Sultana submitted a handwritten inventory of household furnishings and personal property that included items that were not destroyed in the fire and did not have the value she claimed. Great American also alleged Sultana supported her claim for lost rental income by submitting a lease with a tenant who never rented the property and only signed the lease to help Sultana support her claim.

Section 1871.7 is part of the Insurance Fraud Prevention Act, which the Legislature enacted to deter fraud by encouraging insurance companies and private individuals to file insurance fraud claims. (*State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 448; *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 546-548.) Section 1871.7 authorizes "[a]ny interested persons, including an insurer," to bring a civil action in the name of the State of California for violation of certain statutes that criminalize insurance fraud. (§ 1871.7, subds. (b) & (e)(1).) Section 1871.7 provides that every person who violates its provisions or the provisions of Penal Code sections 549, 550, or 551 shall be subject to (1) a civil penalty of $5,000 to $10,000 for each fraudulent claim presented to an insurance company; (2) an assessment of not more than three times the amount of each fraudulent claim; and (3) attorneys fees and costs. (§ 1871.7, subds. (b) & (g).) The statute directs the court to divide the recovery between the person bringing the action and the state based upon their levels of involvement in the action and the extent of injury the person suffered. (§ 1871.7, subd. (g).)

To support its motion, Great America presented evidence showing (1) Sultana submitted a loss claim based on the fire at the Temecula ranch; (2) Great American paid Sultana $532,001.39 on that claim; (3) the Riverside County District

Attorney filed a criminal information charging Sultana with five counts of felony insurance fraud; (4) Sultana pleaded guilty to count 5, which charged her with violating Penal Code section 550, subdivision (b)(1);[2] and (5) Sultana's fraud voided her entire policy and therefore she was not entitled to receive any compensation on her claim. This evidence satisfied Great American's initial burden.

Any violation of Penal Code section 550 is a violation of Section 1871.7. (§ 1871.7, subd. (b) ["Every person who violates any provision of . . . Section . . 550 . . . of the Penal Code shall be subject . . . to a civil penalty . . . plus an assessment of not more than three times the amount of each claim . . ."].) By pleading guilty to a felony charge of violating Penal Code section 550, subdivision (b)(1), Sultana also admitted she violated Section 1871.7. *(Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605-606 (*Teitelbaum Furs*) ["A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission"]; *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1051-1052 (*Oiye*) [same]; *20th Century Ins. Co. v. Schurtz* (2001) 92 Cal.App.4th 1188, 1193 (*Schurtz*) ["the plea is an admission of every element of the charged offense"].) To make a prima facie showing establishing its right to judgment on this claim, Great American therefore needed to present evidence establishing Sultana pleaded guilty to violating Penal Code section 550, that violation injured Great American, and the amount of Great American's damages. The foregoing satisfied Great American's initial burden.

Sultana contends her guilty plea did not conclusively establish her civil liability to Great American. In support, Sultana cites *Kerns v. CSE Ins. Group* (2003)

---

2      Penal Code section 550, subdivision (b)(1) provides, "It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following: [¶] (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

9

106 Cal.App.4th 368, 395 (*Kerns*). Sultana, however, misconstrues the effect of her guilty plea, the moving party's initial burden on summary adjudication, and the *Kerns* decision.

A guilty plea is admissible as a party admission in a later civil action arising out of the same offense (*Teitelbaum Furs*, *supra*, 58 Cal.2d at p. 605; *Oiye*, *supra*, 211 Cal.App.4th at pp. 1051-1052), but it does not conclusively establish the elements of the charged offense and does not collaterally estop the defendant from contesting the civil cause of action (*Oiye*, at p. 1052; *Rusheen v. Drews* (2002) 99 Cal.App.4th 279, 284). In a later civil action, the defendant may present evidence to "'contest the truth of the matters admitted by his plea and explain why he entered the plea.'" (*Oiye*, at p. 1052, quoting *Rusheen*, at p. 284.) Nonetheless, the plea admits every element of the charged offense sufficient to establish a civil claim if it is not rebutted. (*Schurtz*, *supra*, 92 Cal.App.4th at p. 1193; *Century-National Ins. Co. v. Glenn* (2001) 86 Cal.App.4th 1392, 1397-1398 (*Glenn*).)

In seeking summary adjudication, the moving party is not required to present evidence that conclusively establishes his or her claim. Rather, the moving party must present evidence making a prima facie showing of his or her right to judgment. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.) As explained above, the burden then shifts to the opposition to present evidence establishing a triable issue of fact.[3] (*Lawlor*, *supra*, 222 Cal.App.4th at pp. 630-631.) A guilty plea is sufficient to meet a moving party's initial burden and shifts the burden to the opposing party to present evidence establishing a triable issue regarding the facts the plea admits. (*Glenn*, *supra*, 86 Cal.App.4th at

---

[3]     If a conclusive showing was required, there would be no shifting of the burden as required by Code of Civil Procedure section 437c. Either the moving party would make a conclusive showing and the motion would be granted (because the opposition cannot overcome a conclusive showing), or the moving party would fail to make a conclusive showing and the motion would be denied (without the opposition having to present any evidence).

10

pp. 1397-1398 [guilty plea was admissible evidence and satisfied plaintiff's initial burden on summary judgment to show defendant acted willfully because willful conduct was element of charged offense]; see *Schurtz*, *supra*, 92 Cal.App.4th at pp. 1193, 1196-1197 [defendant's guilty plea established defendant committed a criminal act and satisfied moving party's initial burden to show insurance policy's criminal act exclusion applied].)

Finally, contrary to Sultana's contention, *Kerns* does not stand for the proposition a guilty plea cannot satisfy a party's initial burden on summary judgment. In *Kerns*, an insurance company denied coverage for injuries caused by its insured because the insured pleaded guilty to attempted murder and the policy excluded coverage for intentional wrongdoing. (*Kerns*, *supra*, 106 Cal.App.4th at pp. 374-376.) The Court of Appeal reversed a summary judgment in the insurance company's favor not because the guilty plea failed to satisfy the insurance company's initial burden, but because the opposing party presented evidence establishing a triable issue of fact on whether the insured was sane at the time she committed the crime. (*Id*. at pp. 376-377, 379, 395.) As we explain in the next section, Sultana failed to present any evidence to establish a triable issue of fact.

3.      Sultana Failed to Present Evidence Establishing a Triable Issue

Once Great American met its initial burden, the burden shifted to Sultana to present evidence establishing a triable issue of fact. (*Lawlor*, *supra*, 222 Cal.App.4th at pp. 630-631.) She failed to meet that burden because she presented no evidence in opposition to Great American's motion. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1006-1007 (*Lyons*) ["Without at least a separate statement and evidence in the form of supporting affidavits or declarations, it is impossible to demonstrate the disputed facts"]; see *Carlsen*, *supra*, 227 Cal.App.4th at p. 888; *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162 (*Sangster*).)

11

Sultana denied Great American's allegations and opposed the motion, arguing there were possible explanations for her guilty plea other than she committed the charged offense. For example, she suggested guilty pleas are often entered as a compromise to avoid the possibility of a lengthy jail sentence should the jury mistakenly convict a defendant. Sultana's speculation about why a defendant might plead guilty, however, does not explain why she pleaded guilty and does not create a triable issue. (*Oiye*, *supra*, 211 Cal.App.4th at p. 1052.) As explained above, claims, theories, argument, and speculation do not create a triable issue of fact. (*Uhrich*, *supra*, 109 Cal.App.4th at p. 616; *Wiz Technology*, *supra*, 106 Cal.App.4th at p. 11; *Lyons*, *supra*, 40 Cal.App.4th at p. 1014 ["Clearly, the assertions and allegations of Lyons's attorney, unsupported by declarations or affidavits, do not serve to create a factual issue"].) Substantial responsive evidence was required (*Carlsen*, *supra*, 227 Cal.App.4th at p. 888; *Sangster*, *supra*, 68 Cal.App.4th at pp. 162-163), but Sultana did not submit her own declaration denying Great American's allegations or explaining the reasons for her guilty plea, nor did she submit any other evidence to support the arguments she made in her opposition.

Although she acknowledges her failure to file any evidence in opposition to Great American's motion, Sultana contends the trial court should have considered the joint declaration she and Gary filed in opposition to Great American's earlier summary judgment motion. Because that earlier declaration denied Sultana committed insurance fraud, she contends the trial court erred in granting Great American's later summary adjudication motion. She is mistaken.

Parties seeking and opposing summary adjudication must file separate statements identifying each disputed or undisputed fact, and the evidence to support it. (Code Civ. Proc., § 437c, subd. (b)(3); Cal. Rules of Court, rule 3.1350(e) & (f).) When ruling on a summary adjudication motion, the trial court has discretion to consider evidence the parties failed to disclose in their separate statements, but it is not required to

12

do so. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315 (*San Diego Watercrafts*).) The court's decision whether to consider undisclosed evidence is reviewed for abuse of discretion. (*Id.* at pp. 315-316.) The court abuses its discretion when it ignores evidence a party cites that relates to an obvious claim or defense. "On the other hand, where evidence is not referenced, is hidden in voluminous papers, and is not called to the attention of the court at all, a summary judgment should not be reversed on grounds the court should have considered such evidence." (*Id.* at p. 316.)

Sultana faults the trial court for failing to consider a declaration she filed in opposition to an earlier motion decided by a different judge. Here, the court was aware of the earlier summary judgment motion, but nothing in the record demonstrates it knew the substance of any evidence Sultana filed in opposition to that earlier motion. More importantly, Sultana did not bring her earlier declaration to the court's attention. Indeed, not only did her separate statement fail to refer to the earlier declaration, none of the briefs she filed referred to the declaration and she did not mention it during the hearing on Great American's motion. The trial court therefore did not abuse its discretion by not considering evidence Sultana failed to bring to the court's attention and that was filed in a different motion decided by a different judge months earlier. (See *San Diego Watercrafts*, *supra*, 102 Cal.App.4th at p. 316.)

4.      The Trial Court Was Not Required to Provide Sultana an Additional Opportunity to Submit Opposing Evidence Before Granting the Motion

Sultana contends her failure to file any evidence in opposition to Great American's motion was a mere procedural defect that the trial court could not rely upon to grant the motion unless it first gave her an opportunity to cure that defect. Sultana's failure to submit any evidence, however, is not a mere procedural defect. And, in any event, the court gave her an opportunity to correct her deficient opposition.

13

Sultana relies on cases finding the trial court abused its discretion by granting summary judgment based solely on the opposing party's failure to file a proper responsive separate statement. (See *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1214-1215 (*Parkview Villas*); *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1161-1162 (*Kalivas*); *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 98-99 (*Security Pacific*).) As explained above, the party opposing a summary judgment motion must file a responsive separate statement that identifies which facts are disputed and the specific evidence showing a dispute exists. (Code Civ. Proc., § 437c, subd. (b)(3); Cal. Rules of Court, rule 3.1350(f); *Parkview Villas*, at p. 1209.) Code of Civil Procedure section 437c gives the trial court discretion to grant a summary judgment based on the opposing party's failure to file a proper separate statement. (Code Civ. Proc., § 437c, subd. (b)(3); *Parkview Villas*, at p. 1209.)

In both *Kalivas* and *Security Pacific*, the trial court relied solely on the opposing party's failure to file a separate statement without considering whether the moving party met its initial burden to show no triable issue of material fact existed. The appellate courts reversed both summary judgments, explaining the failure to file a separate statement was a procedural defect that provided no basis for the trial court to grant the motions without first giving the opposing party the opportunity to correct the defect. (*Kalivas*, *supra*, 49 Cal.App.4th at pp. 1161-1162; *Security Pacific*, *supra*, 4 Cal.App.4th at pp. 93-95, 98-99; see *Parkview Villas*, *supra*, 133 Cal.App.4th at pp. 1214-1216 [trial court could not grant summary judgment based on opposing separate statement's failure to describe disputes and provide specific cites to evidence filed in opposition to motion unless court first provides opportunity to correct deficiency].)

These cases are distinguishable because Sultana's failure to submit admissible evidence to support her opposition is not a curable procedural defective, but a substantive failure upon which the motion may be granted once the court determined

14

Great American met its initial burden. (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 576.) Indeed, unlike *Kalivas*, *Security Pacific*, and *Parkview Villas*, the trial court did not grant Great American's motion based solely on a defect in Sultana's separate statement without reaching the merits of the motion. To the contrary, the trial court granted the motion because it found Great American's evidence satisfied its initial burden and Sultana failed to present evidence establishing a triable issue. Contrary to Sultana's suggestion, the party opposing summary judgment is not automatically entitled to a second opportunity to present evidence to defeat the motion. The party must demonstrate good cause for a second opportunity, and Sultana failed to do so. (*Oldcastle Precast*, at p. 576.)

Moreover, the trial court gave Sultana an opportunity to correct her deficient opposition papers. At the hearing on the motion, the trial court informed Sultana her separate statement improperly objected to the facts Great American identified without clearly stating whether she disputed the facts. The court referred Sultana to California Rules of Court, rule 3.1350, which described the requirements of a proper separate statement. The court also questioned Great American on why it was entitled to recover the full amount it paid Sultana when only a portion of her claim was allegedly fraudulent. The court took the motion under submission, but granted both sides leave to file supplemental papers addressing the problems it found in their original filings.

Great American filed its supplemental papers first, explaining it was entitled to recover the full amount it paid Sultana because her fraud on a portion of the claim voided the entire policy. Great American's supplemental papers also explained the court should grant the motion because Sultana failed to submit any evidence in opposition to the motion. Sultana responded by filing a supplemental brief repeating her earlier contention the guilty plea did not satisfy Great American's initial burden. She also filed an amended separate statement that clearly stated whether she disputed each fact Great American identified in its separate statement. But Sultana failed to file any

15

evidence with her supplemental papers. After receiving these papers, the trial court granted the motion because Great American met its initial burden and Sultana failed to produce evidence establishing a triable issue. Nothing in the court's ruling indicates it relied on any defect in Sultana's separate statement as the basis for granting the motion.

B.     *The Trial Court Exceeded Its Jurisdiction by Granting a Constructive Trust on Real Property Located in Texas*

Sultana contends the trial court lacked jurisdiction to grant Great American a constructive trust over the real property she owns in Sulphur Springs, Texas. We agree.

"'A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. [Citations.]' [Citations.]" (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 398 (*PCO*); see *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1069 (*Burlesci*).) "The trust is passive, the only duty being to convey the property." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 319, p. 892; see *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 117.)

"In order to create a constructive trust there must be an existing res (property or some interest in the property)." (*Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 136 (*Heckman*); see *PCO*, *supra*, 150 Cal.App.4th at p. 398 ["""a constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it"""" (original italics)]; *Burlesci*, *supra*, 68 Cal.App.4th at p. 1069 [same].) Here, the res upon which the trial court imposed a constructive trust is the real property Sultana owns with Gary in Sulphur Springs, Texas.

16

California courts, however, have long recognized they may not make orders or judgments affecting title to real property in another state: "That the courts of one state cannot make a decree which will operate to change or directly affect the title to real property beyond the territorial limits of its jurisdiction must be conceded. The doctrine that a court, not having jurisdiction of the *res*, cannot affect it by its decree is firmly established. [Citations.] . . . The reason for the rule is that jurisdiction to affect the title to real estate by a judgment *in rem*, or directly against the thing itself, exists only in the courts of the state wherein the land is situated. 'No principle is more fundamental or thoroughly settled than that the local sovereignty, by itself or its judicial agencies, can alone adjudicate upon and determine the status of lands and immovable property within its borders, including their title and its incidents and the mode in which they may be charged or conveyed. Neither the laws of another sovereignty, nor the judicial proceedings, decrees and judgments of its courts, can in the least degree affect such lands and immovable property.' [Citations.]" (*Taylor v. Taylor* (1923) 192 Cal. 71, 76; see *Rozan v. Rozan* (1957) 49 Cal.2d 322, 330 (*Rozan*); *Hardy v. Hardy* (1958) 164 Cal.App.2d 77, 79 (*Hardy*); *Schluter v. Schluter* (1933) 130 Cal.App. 780, 783-784; *Redwood Investment Co. v. Exley* (1923) 64 Cal.App. 455, 459.) The United States Supreme Court is in accord. (*Fall v. Eastin* (1909) 215 U.S. 1, 11 (*Fall*) ["we think that the doctrine that the court, not having jurisdiction of the *res*, cannot affect it by its decree . . . is firmly established" (original italics)].)

Not only does this rule invalidate any judgment or order purporting to fix title to land in another state, it also invalidates any judgment or order imposing a lien on property in another state: "In the present case the purported imposition of the lien can in no way be considered other than as an attempt by a court of this state to affect title to land in Illinois. It necessarily follows that the trial court herein acted in excess of its jurisdiction and that the order, at least to that extent, is of no force or effect." (*Hardy*, *supra*, 164 Cal.App.2d at p. 79; see *Rozan*, *supra*, 49 Cal.2d at p. 332 [invalidating

17

portion of judgment granting a lien on real property located in North Dakota].) Accordingly, the portion of the trial court's judgment granting Great American a constructive trust on real property located in Texas is void because it imposes a trust or a lien that affects title to real property in another state. [4]

Great American points to an exception that permits courts to order parties over which they have personal jurisdiction to take actions that will affect title to real property in another state: "By means of its power over the person of the parties before it, a court of equity may in proper cases compel them to act in relation to property not within the jurisdiction, but its decrees do not operate directly upon the property nor affect the title. They are only made effectual through the coercion of the parties, by directing some action on their part, such as the execution of conveyances or the cancellation of instruments." (*Taylor*, *supra*, 192 Cal. at p. 76; see *Rozan*, *supra*, 49 Cal.2d at p. 330; *Hardy*, *supra*, 164 Cal.App.2d at p. 79; *Fall*, *supra*, 215 U.S. at p. 8.) This exception, however, does not apply here because the trial court did not order Sultana to take any action regarding the Texas property. To the contrary, the trial court granted Great American's request to place a constructive trust over real property in Texas. As explained above, that remedy is directed to the property—the res—not the person and therefore cannot affect land in another state.

Great American's reliance on the United States Supreme Court's decision in *Fall* is unavailing. There, a husband and wife owned property in Nebraska when the husband filed for divorce in Washington, where the couple lived. The Washington court granted the husband a divorce, but found the Nebraska property to be the wife's separate property. Consistent with the foregoing exception, the Washington court ordered the

---

[4]     The trial court also granted Great American an equitable lien on the Texas property. The parties do not distinguish the constructive trust from the equitable lien, and therefore our analysis also applies to the equitable lien because it purported to grant an interest in real property.

18

husband to execute a deed conveying his interests in the Nebraska property to the wife. When the husband refused, the Washington court appointed a commissioner who executed the conveyance on the husband's behalf. (*Fall*, *supra*, 215 U.S. at pp. 2-4.)

The wife later filed a quiet title action in Nebraska based upon the conveyance, but the Nebraska court denied her any relief because the husband had not signed the conveyance. (*Fall*, *supra*, 215 U.S. at pp. 2, 4.) The Nebraska court concluded the purported conveyance was based on a void and ineffective judgment seeking to affect title to property in another state because the Washington court ultimately carried out the conveyance through its appointed commissioner, not the husband. (*Id*. at pp. 5-8.) The United States Supreme Court affirmed the Nebraska decision based on the general rule prohibiting a state from making judgments or orders affecting title to property in other states. The *Fall* court explained the foregoing exception did not apply because the Washington court did not use its coercive powers to make the husband execute the conveyance, but rather ordered the conveyance itself by appointing a commissioner to execute the conveyance on the husband's behalf. (*Id*. at p. 14.) *Fall* therefore does not support Great American's position.

Finally, Great American contends the constructive trust remedy allows a party to trace wrongfully obtained funds to prevent the wrongdoer from keeping any profit that may have accrued. According to Great American, the purpose of the constructive trust remedy would be frustrated if a defendant could avoid its effect simply by using the ill-gotten gains to purchase real property in another state. None of the cases Great American cites, however, address the court's jurisdiction to impose a constructive trust on real property located in another state. (See *Heckman*, *supra*, 168 Cal.App.3d at p. 135; *PCO*, *supra*, 150 Cal.App.4th at p. 398; *Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990-991.) "Cases are not authority for propositions not decided." (*Sino Century Development Limited v. Farley* (2012) 211 Cal.App.4th 688, 696.) Moreover, this contention puts the cart before the horse. A court's jurisdiction

19

determines what remedies it may award; the purpose of a remedy does not determine the court's jurisdiction. Indeed, a court does not acquire jurisdiction to award a particular remedy simply because the remedy would make it easier for the plaintiff to enforce his or her judgment. There must be a constitutional basis for the court's exercise of jurisdiction. As explained above, no such basis exists in this case, and therefore the trial court exceeded its jurisdiction by granting a constructive trust on real property located in Texas.[5]

## C. *The Trial Court Properly Awarded Damages Under Section 1871.7*

In its cross-appeal, Great American complains the court's decision to award damages in an amount equal to two times Sultana's fraudulent claim is inconsistent with the court's acknowledgement that Sultana "is subject to treble damages at three times the amount of the fraud based on California Insurance Code §1871.7(b)." When viewed in context, the court's decision is not inconsistent, and Great American nonetheless forfeited its objection by failing to raise it in the trial court.

As explained above, Section 1871.7 provides, "Every person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be subject . . . to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation . . . ." (§ 1871.7, subd. (b).) Here, after granting Great American summary adjudication and awarding it $532,001.39 as reimbursement for Sultana's fraudulent claim, the trial court conducted a bench trial on the remaining claims and awarded Great American an additional $532,001.39 as "treble damages" under Section 1871.7, subdivision (b).

---

[5] Sultana also challenges the sufficiency of the evidence to support the trial court's order for a constructive trust. Our conclusion the trial court exceeded its jurisdiction eliminates the need to address that challenge.

20

Although the court's tentative decision states "[Sultana] is subject to treble damages at three times the amount of the fraud based on California Insurance Code §1871.7(b)," the next sentence made clear the court intended to award Great American a total amount equal to only twice Sultana's fraudulent claim rather than three times that claim: "The Court finds in favor of [Great American] and against [Sultana] in the amount of $532,001.39, *an amount equal to the amount of the insurance fraud*." (Italics added.) When viewed in this context, the trial court's decision is not inconsistent. To the contrary, it simply acknowledges that Sultana's fraudulent conduct made her subject to an assessment (to use the statute's term) of up to three times the amount of her fraudulent claim, but the trial court determined an award equal to two times the claim was appropriate.

Moreover, Great American was required to bring any inconsistency or ambiguity in the court's decision to its attention or forfeit any appellate challenge based on the alleged inconsistency or ambiguity. The court informed the parties the tentative decision would become the statement of decision unless the parties timely requested findings on other issues, and the parties made no such request. (See Cal. Rules of Court, rule 3.1590(c) ["The court in its tentative decision may: [¶] . . . [¶] (4) Direct that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision"].) Following any bench trial at which the court decides a question of fact, the parties may request a statement of decision explaining the factual and legal basis for the court's decision. (Code Civ. Proc., § 632.) Once the court issues its statement of decision, the parties have 15 days to object and bring any omissions or ambiguities to the court's attention so the court may correct them. (Cal. Rules of Court, rule 3.1590(g).) A party who fails to bring an omission or ambiguity to the court's attention waives the right to claim on appeal that the statement

21

was deficient based on that omission or ambiguity, and the appellate court will imply all findings necessary to support the trial court's decision. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494-495; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58-59.) Here, Great American did not object to any aspect of the trial court's statement of decision, and therefore it forfeited its contention the statement was inconsistent or ambiguous on the amount of damages awarded under Section 1871.7.

Finally, Section 1871.7, subdivision (b), granted the trial court discretion to award an amount less than three times the fraudulent claim. That subdivision states the person is subject to "an assessment of *not more than* three times the amount of each claim for compensation." (§ 1871.7, subd. (b), italics added; see *People ex rel. Monterey Mushrooms, Inc. v. Thompson* (2006) 136 Cal.App.4th 24, 38-39 [affirming trial court's decision to award minimum statutory amount of $5,000 in penalties for each fraudulent claim rather than maximum statutory amount of $10,000 per claim].) Section 1871.7, subdivision (c), provides, "The penalties set forth in subdivision (b) are intended to be remedial rather than punitive . . . . If the court finds, after considering the goals of disgorging unlawful profit, restitution, compensating the state for the costs of investigation and prosecution, and alleviating the social costs of increased insurance rates due to fraud, that such a penalty would be punitive and would preclude, or be precluded by, a criminal prosecution, the court shall reduce that penalty appropriately." (§ 1871.7, subd. (b).) The trial court therefore had discretion to award Great American less than three times the amount of Sultana's fraudulent claim, and Great American provides no explanation why the award the court made was an abuse of that discretion.

III

DISPOSITION

The judgment is affirmed in part and reversed in part. The judgment granting Great American summary adjudication on its claim under Section 1871.7 and

22

awarding Great American damages and penalties under that section is affirmed. The judgment awarding Great American a constructive trust and equitable lien on real property located in Texas is reversed. In the interest of justice, the parties shall bear their own costs on appeal.


                                                    ARONSON, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

23