Filed 5/28/15  Aleksanian v. County of Los Angeles CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KNAR ALEKSANIAN, | |
| Plaintiff and Appellant, | G050088 |
| v. | (Super. Ct. No. LC098651) |
| COUNTY OF LOS ANGELES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and postjudgment order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Judgment reversed; postjudgment order moot.

Law Offices of Julia Sklar and Julia Sklar for Plaintiff and Appellant.

Law Offices of Marc J. Wodin and Marc J. Wodin for Defendant and Appellant.

*        *        *

Plaintiff and appellant Knar Aleksanian appeals from the summary judgment entered in favor of defendant and appellant County of Los Angeles (County). Aleksanian sued the County to recover for injuries she suffered when she tripped over a crack in the floor of a courthouse lobby. The County sought summary judgment on Aleksanian's single cause of action for dangerous condition of public property, arguing it could not be liable because it neither owned nor controlled the lobby floor where Aleksanian fell. According to the County, it deeded to the state title to the entire courthouse before Aleksanian fell, and it did not control the lobby floor because the agreement for the County and the state to jointly use the courthouse building placed responsibility for maintaining and repairing the floor on the state. The trial court agreed and granted the County's motion.

We reverse. Although it is undisputed the County did not own the courthouse at the time of Aleksanian's fall, the plain language of the agreement between the County and the state delegates responsibility for the maintenance and repair of the entire lobby area to the County. The ability to remedy the alleged dangerous condition created by the crack in the lobby floor establishes the County had sufficient control to make it liable if Aleksanian establishes the other elements of her claim. Accordingly, the agreement between the County and the state concerning the joint use of the courthouse does not satisfy the County's initial burden on its summary judgment motion.

The County also appeals from a postjudment order denying the County's motion for defense costs. Based on our conclusion the trial court erred in granting the County summary judgment, no basis exists to support the County's recovery of its defense costs. The postjudment order and the County's appeal are therefore moot.

I

FACTS AND PROCEDURAL HISTORY

In December 2011, Aleksanian visited the Los Angeles Superior Court, Van Nuys Courthouse East (Van Nuys Courthouse) to help her son pay a traffic ticket. As she approached the elevators in the main floor lobby, Aleksanian tripped and fell over a crack in the terrazzo floor, breaking her arm and sustaining other injuries. At the time Aleksanian fell, the State of California, acting through the Judicial Council of California, Administrative Office of the Courts (Judicial Council) owned the Van Nuys Courthouse.

The County previously owned the Van Nuys Courthouse. Between 1988 and 2002, the Legislature passed various trial court funding and facilities acts authorizing all counties to transfer their trial court facilities to the Judicial Council. (See Gov. Code, §§ 70301 et seq., 77000 et seq., 77200 et seq.)[1] This legislation required each county and the Judicial Council to enter into agreements establishing the terms and conditions for the county to transfer ownership and responsibility for its trial court facilities. (See, e.g., §§ 70321, 70312.) For trial court buildings that a county continued to use jointly with the Judicial Council, the legislation required the county and the Judicial Council to enter into a separate agreement establishing the terms and conditions for the shared use of the building, including responsibility for ongoing maintenance and administration. (See, e.g., § 70343.)

In November 2008, the County and the Judicial Council entered into the "Transfer Agreement Between the Judicial Council of California, by and through the Administrative Office of the Courts, and the County of Los Angeles for the Transfer of Responsibility for and Title to the Van Nuys Courthouse East" (Transfer Agreement) and the "Joint Occupancy Agreement Between the Judicial Council of California, by

---

[1] All statutory references are to the Government Code unless otherwise stated.

and Through the Administrative Office of the Courts, and the County of Los Angeles for the Van Nuys Courthouse East" (Joint Occupancy Agreement). Under these Agreements, the County deeded title to the Van Nuys Courthouse to the Judicial Council in December 2009. The Joint Occupancy Agreement divided the Van Nuys Courthouse into three areas—the "Court Exclusive-Use Area," the "County Exclusive-Use Area," and the "Common Area"—and also divided responsibility for each of these areas between the Judicial Council and the County as described below.

Aleksanian sued the County to recover for her injuries. The operative complaint asserts a single cause of action for dangerous condition of public property, alleging the County owned, maintained, and controlled the Van Nuys Courthouse.[2] The County moved for summary judgment, arguing Aleksanian could not establish an essential element of her claim because (1) the County neither owned nor controlled the property where Aleksanian fell and (2) the crack was too small to constitute a dangerous condition as a matter of law. The trial court granted the motion on the first ground without ruling on the second. The court concluded the County met its initial burden by showing it transferred ownership of the Van Nuys Courthouse to the Judicial Council two years before Aleksanian fell, and the Transfer Agreement and Joint Occupancy Agreement assigned responsibility to the State for maintaining the area where Aleksanian fell. According to the trial court, Aleksanian failed to meet her burden to establish a triable issue because she did not dispute the State owned the Van Nuys Courthouse and she presented no evidence showing the County actively maintained the area where she fell despite the terms of the Transfer Agreement and Joint Occupancy Agreement.

---

[2] Aleksanian also sued the Judicial Council, the Administrative Office of the Courts, and the Superior Court of California, County of Los Angeles, but the trial court dismissed Aleksanian's claims against these defendants based on her failure to comply with claim presentation requirements. The County nonetheless filed an indemnity cross-complaint against these defendants.

4

Based on the ruling granting its summary judgment motion, the County moved for an award of defense costs on the ground Aleksanian did not bring this action "with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint." (Code Civ. Proc., § 1038, subd. (a).) The trial court denied the motion, finding Aleksanian brought the action in good faith.

Aleksanian appeals from the summary judgment entered in the County's favor, and the County appeals from the postjudgment order denying its motion for defense costs.

II

DISCUSSION

A.    *Governing Summary Judgment Principles*

"A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. [Citation.] The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim. [Citations.] To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law. [Citation.] '"If a plaintiff pleads several theories, the defendant has the burden of demonstrating there are no material facts requiring trial on any of them."' [Citation.]" (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889 (*Carlsen*).)

"Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts." (*Carlsen*, *supra*, 227 Cal.App.4th at p. 889.) The plaintiff opposing the motion, however, has no burden to present any evidence until the defendant meets his or her initial burden. (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 940 ["'Where the evidence presented by

5

defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff'"].)

We review a trial court's ruling on a summary judgment motion de novo. (*Carlsen*, *supra*, 227 Cal.App.4th at p. 890.)

B.    *The County Failed to Meet Its Initial Burden to Show It Did Not Control the Area Where Aleksanian Fell*

In California, a public entity is liable for an injury only as provided by statute. (§ 815.) "In other words, direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183.)

Section 835 makes a public entity liable for an injury caused by a dangerous condition of its property.[3]  Section 830, subdivision (c) defines "'[p]roperty of a public entity'" and "'public property'" as real or personal property "owned or controlled by the public entity." Because this definition is "disjunctive rather than conjunctive," a public entity is liable if it either owned or controlled the property that caused the injury. (*Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 989-990 (*Huffman*).) "[C]ontrol exists if the public entity has the 'power to prevent, remedy or guard against the dangerous condition.' [Citation]." (*Id*. at p. 990; see *Public Utilities*

---

[3]    Specifically, section 835 declares "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that [(1)] the property was in a dangerous condition at the time of the injury, [(2)] that the injury was proximately caused by the dangerous condition, [(3)] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [(4)] that either:  [¶]  (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or  [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

6

*Com. v. Superior Court* (2010) 181 Cal.App.4th 364, 375-376 (*PUC*) [Although Public Utilities Commission had authority to regulate railroad crossing and order others to correct dangerous condition, it lacked control over crossing because it had no authority to correct dangerous condition itself].)

Here, the County's motion turns on whether the County controlled the floor in the lobby where Aleksanian fell because the parties agree the County did not own the Van Nuys Courthouse at the time of the fall. To meet its initial summary judgment burden on the control issue, the County points to the two sections of the Joint Occupancy Agreement that assign responsibility for maintaining and repairing the "Common Area."

Section 3.2.2.1 states, "During the Term, [the Judicial Council, as] the Managing Party[,] is responsible for the Operation of the Common Area under this [Agreement] . . . . During the Common Area Delegation Period (defined below [in section 3.2.2.2]), the County shall undertake the Operation of the Common Area in accordance with the Service Standards." Section 3.2.2.2 states, "Notwithstanding anything to the contrary in this [Agreement], commencing on the Responsibility Transfer Date and continuing for as long as the Parties agree thereafter consistent with the terms of this [Agreement] (the 'Common Area Delegation Period'), the [Judicial] Council exclusively delegates all of its rights and duties as Managing Party to the County (the 'Common Area Delegation'), and the County accepts the Common Area Delegation and agrees to act in its delegated role as the Managing Party on behalf of the [Judicial] Council. During the Common Area Delegation Period, the County shall be entitled to all rights provided to, and shall be obligated to perform all duties required of, the Managing Party in this [Agreement] . . . ." The parties do not dispute that the term "Operation" includes the maintenance and repair of the designated area, the "Service Standards" referred to in section 3.2.2.1 are set forth in Attachment 3 to the Joint Occupancy Agreement, the term "Common Area" includes the lobby where Aleksanian fell, and Aleksanian fell during the "Common Area Delegation Period."

7

The County contends these two sections show it lacked control over the lobby floor where Aleksanian fell because these sections place responsibility for maintaining and repairing the floor on the Judicial Council. According to the County, these two sections do not require it to repair and maintain all portions of the Common Area, but rather only those portions expressly identified in the Service Standards. Because the Service Standards do not refer to the floor, the County concludes it had no responsibility to maintain or repair the floor, and therefore lacked the control required to impose liability. We disagree with the County's interpretation of these two sections because the plain language of these provisions assigns responsibility for the maintenance and repair of the entire Common Area to the County. As explained above, a party's ability to repair a dangerous condition establishes control over the property for purposes of sections 830 and 835. (See *Huffman*, *supra*, 84 Cal.App.4th at p. 990; *PUC*, *supra*, 181 Cal.App.4th at pp. 375-376.)

"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. [Citation.] 'The words of a contract are to be understood in their ordinary and popular sense.' [Citations.]" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." (*Service Employees Internat. Union, Local 99 v. Options—A Child Care & Human Services Agency* (2011) 200 Cal.App.4th 869, 879.) When, as here, the parties offer no extrinsic evidence on the contract's meaning, we independently construe the contract. (*Founding Members*, at p. 955.)

Section 3.2.2.1's plain language makes the Judicial Council responsible for the maintenance and repair of the entire Common Area without limitation. Section 3.2.2.2 then delegates all of the Judicial Council's rights and duties to maintain

8

and repair the Common Area to the County. Nothing in section 3.2.2.2 limits that delegation to only certain portions of the Common Area or otherwise restricts the County's delegated responsibility to maintain and repair the entire Common Area. The second sentence in section 3.2.2.1 acknowledges this delegation and requires the County to maintain and repair the Common Area "in accordance with the Service Standards." Contrary to the County's contention, neither this sentence nor the Service Standards attached to the Joint Occupancy Agreement purports to limit the County's responsibility to maintain and repair the Common Area to only those portions identified in the Service Standards.

The Service Standards merely establish how the Common Area must be maintained and repaired, not what portions must be maintained and repaired. For example, the Service Standards provide "electrical panels" must be maintained to design specification, inspected as required, and repaired or replaced as needed, and "plumbing fixtures (e.g., toilets, sinks, urinals, faucets)" simply must be repaired or replaced as needed. The Service Standards also provide how the County must respond to requests for service by the Judicial Council. For example, the County must respond within two hours if the request involves "risk or injury to persons and/or damage or loss of property," but the County has four hours to respond if the request involves "significant discomfort to or disruption of building occupants' operations (e.g., air conditioning)."

Accordingly, we conclude these Joint Occupancy Agreement provisions do not satisfy the County's initial burden to show Aleksanian could not establish the essential element of control, and therefore the trial court erred in granting the motion. In reversing the judgment, we do not address the second ground on which the County sought summary judgment—the crack was too small to constitute a dangerous condition as a matter of law. The trial court did not reach that issue and neither party has briefed it in this court. We may not affirm a summary judgment on a ground not relied upon by the trial court without first requesting briefing from the parties. (Code Civ. Proc., § 437c,

9

subd. (m)(2).)  We decline to request briefing because neither party has asked us to reach this issue.

C.    *The County's Cross-Appeal is Moot*

The County cross-appeals from the trial court's order denying the County's motion for defense costs under Code of Civil Procedure section 1038.  That section allows a defendant that successfully moves for summary judgment in an action under the Government Claims Act (§ 810 et seq.) to seeking its defense costs on the grounds the plaintiff brought the action without reasonable cause and a good faith belief there was a justifiable controversy.  The section also states it only applies if the defendant brings a summary judgment motion and the motion is granted.  (Code Civ. Proc., § 1038, subd. (d).)  Because we reverse the trial court decision granting the County summary judgment, this section no longer applies at this time and the County's cross-appeal is therefore moot.

III

DISPOSITION

The judgment is reversed and the postjudgment order is moot.  Aleksanian shall recover her costs on appeal.

ARONSON, J.

WE CONCUR:

MOORE, ACTING P. J.

THOMPSON, J.

10