Filed 12/3/15  Santiago v. Chavez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PEDRO LOPEZ SANTIAGO et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>ISIDRO CHAVEZ et al.,<br><br>  Defendants and Respondents. | 2d Civil No. B259427<br>(Super. Ct. No. 1390566)<br>(Santa Barbara County) |

Pedro Lopez, Jr., (Lopez) was stabbed to death on property owned by Isidro and Maria Chavez (respondents).  Lopez's parents, Pedro Lopez Santiago and Guadalupe Ramirez (appellants), sued respondents for negligence, premises liability, and wrongful death.  The trial court granted summary judgment in favor of respondents, and appellants appeal from that judgment.  We affirm.

### BACKGROUND

Respondents own a four-unit apartment building in Santa Maria (the property).  Each unit is occupied by tenants who pay rent to respondents.

On March 5, 2010, M.P. and H.A. lived in unit "D" with their mother.  At about 10:00 p.m. that night, Lopez was stabbed to death in the carport of unit D by Christian Chavez,[1] a member of the West Park Gang.  The operative complaint

---

[1] Although Chavez and respondents share a last name, they are not related.

alleged that M.P. and H.A. were members of the same gang, invited Chavez over that night "for one of their frequently occurring parties," and "stood next to Chavez" while he committed the crime. M.P. had also allegedly been stabbed in a prior incident and involved in another prior stabbing, while Lopez was not affiliated with any gang and "had been jogging by the building while he stopped to visit a tenant at the property when he was violently stabbed to death . . . ."

The complaint also alleged that other tenants had previously complained to respondents about "loud drunken parties several nights per week in the carport and driveway area [of unit D], gang member activity, police raids, drug use on the premises, sex in public and acts of violence." Respondents purportedly "did nothing to prevent this illegal and dangerous activity from continuing" by, for example, evicting M.P. or H.A., ordering them "to stop engaging in violent and illegal conduct," "post[ing] signage restricting the behavior" or "put up any lighting to deter, and did not call the police to stop the illegal conduct." Respondents also allegedly knew about two prior police "raid[s]" on the he property "just weeks prior to the Lopez murder as well as several other crimes at [unit D] including drug arrests, sexual assault, drunk in public, theft, and resisting arrest." Appellants sought to hold respondents liable for the damages they suffered as a result of Lopez's death on the grounds that (1)"further criminal and/or dangerous activities" on the property were foreseeable to respondents such that they owed a duty to prevent such activities; and (2) Lopez's death was caused by the breach of that duty.

In moving for summary judgment, respondents each declared under oath that prior to the stabbing incident they had no knowledge of any criminal activity on the property, including illegal drug usage in the common areas or "loud drunken parties" or "any prior acts of physical violence on th[e] property." Respondents also said they had no prior knowledge of Chavez or Lopez or of any disturbance or disagreement between them and/or the occupants of unit D.

In opposing summary judgment, appellants submitted a declaration from private investigator Hector Garcia along with a report summarizing interviews

2

Garcia conducted with other tenants at the property over two-and-a-half years after the stabbing incident. According to the report, each interviewee referred to loud parties and drinking at unit D prior to the stabbing, and a few said they had complained (or had been told that other tenants had complained) to respondents about the noise. Every interviewee, however, also said there had been no prior acts of violence on the property, and that subsequent to the stabbing respondents had prohibited the residents of unit D from having any more parties there.

Appellants also submitted a declaration from one of appellants' attorneys with a copy of a deposition subpoena served on the Santa Maria Police Department attached as an exhibit. Counsel then offered, based on her "personal[] review[]" of the records produced in response to the subpoena, that within the 30 days preceding the stabbing incident "there were law enforcement responses to 5 burglaries, 2 acts of vandalism, 2 arrests for parole violations, 2 arrests for sex crimes, 3 acts of battery, and 1 arrest for domestic violence within a one block radius of the property."

Finally, appellants requested judicial notice of two supplemental police reports regarding the stabbing pursuant to Evidence Code[2] section 452, subdivision (h). Along with the reports, appellants included copies of a search warrant issued for unit D during the investigation of the incident and the supporting affidavit.

Respondents filed written objections to all of appellants' proffered evidence on hearsay grounds and opposed the request for judicial notice of the police reports and their attachments on the ground that the documents were not judicially noticeable and were offered for inadmissible hearsay contained therein. At the outset of the hearing on the summary judgment motion, the court stated, "Well, it's the unusual case where we can grant summary judgment, but this is looking to me like one that may be appropriate for it because I'm not seeing any

---

[2] All further undesignated statutory references are to the Evidence Code.

3

evidence of knowledge of similar violent crimes in the area." The court added, "[i]t is just hard to see what knowledge would have been communicated to the owners of the building and what action they could have taken that would have prevented the ultimate tragedy here."

After arguing her position, appellants' attorney asked for a continuance of the hearing to "give us the opportunity to cure whatever the concerns or the defects are in the interest of justice since it's a triable issue of fact and such an important issue . . . ." Counsel anticipated that further discovery could demonstrate that respondents "didn't replace broken lights or install lighting or signage" in order to deter the commission of criminal acts on their property. Respondents opposed the request as contrary to the rules of summary judgment and characterized it as "a delaying tactic." The court responded, "I don't know as I should," yet granted a two-month continuance. Respondents' counsel asked for a ruling on their evidentiary objections and the court replied, "It was before receiving the objections already my view that the court doesn't take judicial notice of the truth of the content of police reports, and that we need more than hearsay evidence to find a triable issue here."

At the continued hearing, appellants' attorney acknowledged that no additional evidence had been offered in opposition to the summary judgment motion. After further argument, the court ruled that "even if we were to consider the hearsay - which I don't think we should," it was insufficient to defeat summary judgment as a matter of law.[3] Judgment was accordingly entered in favor of respondents.

---

[3] According to the police reports that appellants urged the court to consider, witnesses stated that Lopez–a semi-professional boxer–was actually at the property visiting M.P., had an ongoing dispute with Chavez, and initiated the altercation that led to his death by punching Chavez in the face and breaking his nose.

DISCUSSION

Appellants contend the court erred in granting summary judgment. We conclude otherwise.

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

A defendant moving for summary judgment bears the initial burden showing that the plaintiff's action lacks merit. The defendant can meet this burden by presenting evidence that the plaintiff cannot establish one or more elements of his or her claims such that the defendant is entitled to judgment as a matter of law. (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889.) Once that burden is met, the burden shifts to the plaintiff to present evidence establishing that a triable issue exists on one or more material facts. (*Id.* at pp. 889-890.)

Appellants do not dispute that respondents met their initial burden such that the burden shifted to appellants to present evidence sufficient to create a material issue of fact. They also acknowledge that respondents filed written objections to all of appellants' evidence on hearsay grounds. They claim, however, that the trial court was nevertheless required to consider that evidence–and that this court must treat the objections as overruled–because respondents failed to "press for a ruling" on their objections and the court never responded with a formal ruling. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 533-534.) But respondents did ask for a ruling, and the court ruled on more than one occasion that appellants' evidence was inadmissible hearsay.

5

Moreover, we agree with that ruling. "'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (§ 1200.) The witness statements in Garcia's report and the information offered in the declaration submitted by appellants' attorney are all classic inadmissible hearsay. Contrary to appellants' claim, none of the evidence fell under the business records exception to the hearsay rule (§ 1271).[4] Counsel's declaration–which purported to recount acts she had read about in police documents that were not offered as evidence–meets *none* of the requirements for admissibility under section 1271. Garcia's report is similarly inadmissible because, among other things, the witnesses who spoke to him about what they had seen or done had no official duty to do so. (See *People v. Hernandez* (1997) 55 Cal.App.4th 225, 240 [business records exception does not apply to reports based on observations of victims or witnesses with no official duty to observe and report those observations].) The court properly declined to either judicially notice or otherwise consider the police reports and related documents, which were offered solely for the inadmissible hearsay statements contained therein. (See *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1205 [when police records contain hearsay or multiple hearsay statements, an exception for each level of hearsay must be shown for the evidence to be admissible]; *Burge v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 389 ["Public employee business records . . . are admissible in civil actions only to the extent that they report the employee's firsthand knowledge"].) Appellants' claim

---

**4** Section 1271 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

that their proffered evidence was not offered for the truth of the matters asserted therein–but rather "merely to recognize that there are triable issues of fact" precluding summary judgment"–simply "misses the mark."  "The documents, if relevant, were direct evidence prior [incidents] had occurred at the [property] and were therefore being offered for the truth of the matter asserted."  (*Alvarez*, at p. 1206.)

Because the court did not err in excluding all of appellants' proffered evidence, it properly entered summary judgment in favor of respondents.  In light of this conclusion, we need not address the court's alternative finding that the evidence, even if admissible, was insufficient to create a disputed issue of material fact.

The judgment is affirmed.  Costs to respondents.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7

Jed Beebe, Judge

Superior Court County of Santa Barbara

_____


Law Offices of Peter R. Nasmyth, Jr., Peter R. Nasmyth, Jr., and Catherine Rose Lombardo for Plaintiffs and Appellants.

Law Office of Priscilla Slocum, Priscilla Slocum, Stub, Boeddinghaus & Velasco, David Noel Tedesco for Defendants and Respondents.